UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERAL MILLS, INC., <br><br> Plaintiff, <br><br> -against- <br><br> CHAMPION PETFOODS USA, INC. and MODESTINO MELE, <br><br> Defendants. | No. 20 Civ. 181 (KMK) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND COMPEL ARBITRATION**

Eric A. Savage, Esq.
Gary Moy, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

*Attorneys for Plaintiff*

TABLE OF CONTENTS

PAGE

PRELIMINARY ARGUMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.   THERE IS NO AGREEMENT TO ARBITRATE GMI'S CLAIMS ................................ 2

     A.   There is No Arbitration Agreement Covering the Instant Dispute ......................... 2

     B.   Defendants Omit Critical Language From Their Discussion of the Limited
          Arbitration Provision, and Offer Nothing to Support its Enforcement ................... 5

II.  THE ARBITRABILITY OF GMI'S CLAIMS HAS NOT BEEN DELEGATED
     TO AN ARBITRATOR ....................................................................................................... 7

III. THE FOUR STOCK AGREEMENTS DO NOT CONTAIN ARBITRATION
     PROVISONS .................................................................................................................... 11

IV.  THE TEMPORARY RESTRAINING ORDER SHOULD REMAIN IN PLACE
     IN THE EVENT THAT ARBITRABILITY OF GMI'S CLAIMS IS REFERRED
     TO AN ARBITRATOR ..................................................................................................... 11

V.   CHAMPION CANNOT INVOKE ARBITRATION AGAINST GMI ........................... 12

CONCLUSION ............................................................................................................................. 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

AT&T Techs., Inc. v. Commc'ns Workers,
    475 U.S. 643 (1986)...........................................................................................................7

Collins & Aikman Products Co. v. Buildling Systems, Inc.,
    58 F.3d 16 (2d Cir. 1995) ................................................................................................11

Contec Corp. v. Remote Solution Co.,
    398 F.3d 205 (2d Cir. 2005)...............................................................................................8

Ellington v. EMI Mills Music, Inc.,
    Index No. 112368/2010, 36 Misc.3d 1228(A), 2011 N.Y. Slip Op. 52526 (U),
    (Sup. Ct., N.Y. Cty., Oct. 21, 2011)...................................................................................5

Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,
    815 F.2d 840 (2d Cir. 1987)...............................................................................................2

Howsam v. Dean Witter Reynolds, Inc.,
    537 U.S. 79 (2002).............................................................................................................2

Lasalle Bank ant. Ass'n v. Nomura Asset Capital Corp.,
    424 F.3d 195 (2d Cir. 2005).............................................................................................10

Manlove v. Volkswagen Aktiengesellschaft,
    No. 18 CV 145 (TRM), 2019 WL 2291890 (E.D. Tenn. Jan. 11, 2019) ......................9, 11

Mastrocovo v. Capizzi,
    87 A.D.3d 1296 (4th Dep't 2011).....................................................................................10

Mehler v. Terminix Int'l Co.,
    205 F.3d 44 (2d Cir. 2000)...............................................................................................11

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin,
    No. 91 C 2324, 1991 U.S. Dist. LEXIS 6210, 1991 WL 83163 (N.D. Ill. May
    9, 1991) ............................................................................................................................12

Morgan Stanley Smith Barney, LLC v. Abel, No. 18 CV 141-J-34MCR, 2018
    U.S. Dist. LEXIS 18359, *11 (M.D. Fla. Feb. 5, 2018) ..................................................12

PacifiCare Health Sys., Inc. v. Book,
    538 U.S. 401 (2003)...........................................................................................................2

Quadrant Structured Products Co., Ltd. v. Vertin,
    992 N.Y.S.2d 687 (2014)...................................................................................................5

Rent-A-Center, W., Inc. v. Jackson,
    561 U.S. 63 (2010) .......................................................................................................... 7

Republic of Iraq v. BNP Paribas USA,
    472 F. App'x 11 (2d Cir. 2012) ................................................................................... 13

Reyes v. Metromedia Software, Inc.,
    840 F. Supp. 2d 752 (S.D.N.Y. 2012) ......................................................................... 10

Robbins Co. v. JCM Northlink LLC,
    No. C16-646 (RSL), 2016 U.S. Dist. LEXIS 105180 (W.D. Wash. Aug. 9,
    2016) ............................................................................................................................ 12

Salas v. Universal Credit Services, LLC,
    No. 17 CV 2352 (JLS), 2019 WL 1242448 (S.D. Cal. Mar. 18, 2019) ................... 8, 9

Sokol Holdings, Inc. v. BMB Munai, Inc.,
    542 F.3d 354 (2d Cir. 2008) ........................................................................................ 13

Suchodolski Assoc. v. Cardell Fin. Corp.,
    No. 03 Civ. 4148 (WHP), 2003 U.S. Dist. LEXIS 24993 (S.D.N.Y. Dec. 9,
    2013) ............................................................................................................................ 11

Thomson-CSF, S.A. v. American Arbitration Ass'n,
    64 F.3d 773 (2d Cir. 1995) .......................................................................................... 12

Vertiv Corp. v. Svo Building One, LLC,
    No. 18 CV 1776 (RGA), 2019 WL 145953 (D. Del. Apr. 2, 2019) ............................. 9

Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    919 F. Supp. 1047 (E.D. Ky. 1994) ............................................................................. 12

Winter Inv'rs, llc v. Panzer, No. 14 Civ. 6852 (KPF), 2015 WL 5052563
    (S.D.N.Y. Aug. 27, 2015) ............................................................................................ 13

**Statutes**

9 U.S.C. § 3 ............................................................................................................................ 11

9 U.S.C. § 4 .............................................................................................................................. 2

## PRELIMINARY ARGUMENT[1]

General Mills, Inc. ("GMI") did not enter into an agreement with either Defendant to arbitrate the claims asserted in this action, requiring that Defendants' motion to dismiss and compel arbitration be denied. Defendant Mele is bound by restrictive covenants set forth in each of the five valid and enforceable agreements with GMI. Only one agreement, the Release Agreement, contains a limited arbitration clause in a portion of the document that applies to claims relating to Mele's release of claims and claims covered by that release. Mele executed the Release Agreement on July 16, 2019, and his release waives all legal claims up through and including that date -- which are not at issue in this case. The arbitration clause does not, by its plain language, govern the entire Release Agreement or otherwise extend to the non-compete and non-disclosure provisions contained in a subsequent, wholly separate portion of the Release Agreement. Nothing in the Release Agreement subjects post-employment restrictive covenant disputes to arbitration (which Champion is not a party to in any event). And nothing in Mele's four separate stock agreements requires arbitration of claims relating to Mele's violations of the restrictive covenants contained in those agreements – claims which are asserted here.

In the face of the clear language of Mele's agreements with GMI, Defendants nevertheless seek to rely on a series of interlocking premises to support their claim that this federal action should be dismissed and the January 9, 2020 Order to Show Cause vacated. Defendants argue erroneously that there is an arbitration provision in the Release Agreement that covers all disputes related to Mele's employment with GMI; that disputes concerning the four stock agreements are therefore captured by the Release Agreement's arbitration clause; and that the

---

[1] Capitalized terms used but not defined herein take their meaning as set forth in Plaintiff's Amended Complaint, dated January 9, 2020. (See Docket Entry No. 7)

Court does not even have the authority to decide whether there is an agreement to arbitrate GMI's request for injunctive relief pursuant to all five agreements. But none these premises finds any support in the Release Agreement Mele signed or in the law. As such, the Court should deny Defendants' motion to dismiss and compel arbitration in its entirety.

## ARGUMENT

### I. THERE IS NO AGREEMENT TO ARBITRATE GMI'S CLAIMS

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. See PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 407 n.2 (2003); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84 (2002); Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987). Defendants' motion to compel arbitration must be denied because the limited arbitration provision between Mele and GMI on which they rely does not cover this dispute, nor is there any agreement to arbitrate of any kind between GMI and Champion. Defendants' motion, therefore, fails under both prongs of this test.

#### A. There is No Arbitration Agreement Covering the Instant Dispute

Contrary to Defendants' assertion, GMI did not agree to arbitrate the claims that it now asserts against Mele, and has entered no agreement at all with Champion relevant to this matter. While GMI agreed to arbitrate certain claims relating to Mele's release of claims and claims covered by that release executed following Mele's separation from GMI's employment, the

four corners of Mele's Release Agreement with GMI is clear that its arbitration provision does not cover the non-competition and non-disclosure claims that GMI now asserts.

As an initial matter, Mele accepted four stock agreements containing restrictive covenant agreements, of which he is now in breach. *None* of these stock agreements contains an arbitration provision or is otherwise covered by an arbitration provision in another agreement between Mele and GMI. In other words, GMI's claims asserted pursuant to the stock agreements are not subject to any agreement to arbitrate, may not be ordered to arbitration, and must go forward in this Court.

Mele likewise executed an agreement containing non-competition and non-disclosure obligations at the time that he separated his employment with GMI. The restrictive covenant agreements are contained on the second page of a document entitled Release Agreement. The Release Agreement also contains a release of claims and limited agreement to arbitrate claims related to the release of claims itself and claims covered by that release. But neither the release of claims nor the agreement to arbitrate has any bearing on the non-competition agreement under the express terms of this contract. A review of the applicable contract terms leaves no doubt.

The Release Agreement executed by Mele on July 16, 2019 contains a release of claims, which states:

> In consideration of the transition support referenced above and described in more detail in my severance packet, I hereby release GMI … from all causes of action, claims, debts or other contracts and agreement which I or my heirs may have for any cause up to this date, including, but not limited to, any and all claims directly or indirectly relating to my employment, or to my separation from employment. This release includes any and all claims under federal, state, and local laws prohibiting employment discrimination, harassment or retaliation, and specifically includes, without limitation, claims arising under the Age Discrimination In Employment Act, Title VII of the Civil Rights Act, Employment Retirement Income Security Act, Equal Pay Act, Civil Rights Act of

3

>    1991, Americans with Disabilities Act, Older Workers Benefit Protection Act, and the Workers Adjustment and Retraining Notification Act. . . .

(See Release Agreement, attached as Exhibit A to the Declaration of Rick Budney, Docket Entry No. 15)

Following his release of claims, Mele and GMI's agreement to arbitrate explicitly states:

>    I agree that, in the event there is any dispute or claim arising out of or relating to the ***above release of claims***, including, without limitation, any dispute about the validity or enforceability of the release or the assertion of any claim covered by the release, all such disputes or claims will be resolved exclusively through a final and binding arbitration on an individual basis and not in any form of class, collective, or representative proceeding.  I agree that this arbitration provision is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) and that it is not intended to cover claims that cannot by law be required to be arbitrated or to prevent me from filing a complaint with a governmental administrative agency.  I agree that the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures ("AAA Employment Rules") will govern any arbitration proceeding under this provision and that no other rules or procedures … will be applied to any such proceeding. . . .

(See id. (emphasis added))

GMI's claims are based entirely on conduct by Mele and Champion that post-date the Release Agreement.  Neither Mele's release of claims, nor any other claim that either party might have against the other up through the date of the Release Agreement is at issue in this case.  As such, GMI's claims asserted here are not covered by the plain language of the arbitration provision on which Defendants rely.

Defendants' only argument is that the agreement to arbitrate appears within the same Release Agreement as certain restrictive covenant obligations.  This simplistic argument ignores the actual language and structure of the contract.  The restrictive covenants appear

4

immediately below the following language (and, therefore, not covered by the "above release of claims" subject to arbitration):

> In addition to my release of claims and arbitration provision above, and as a further condition of the transition support described in my packet, I acknowledge and agree to the following:

This introductory phrase resolves and remaining doubt and confirms that the restrictive covenant agreements that follow are not part of the release to which the arbitration provision applies, but that the restrictive covenant provisions are in addition to them.[2]

### B. Defendants Omit Critical Language From Their Discussion of the Limited Arbitration Provision, and Offer Nothing to Support its Enforcement.

Defendants cannot avoid this clear result when the Release Agreement is reviewed in total. Defendants thus try to skirt this issue by omitting the critical phrase "relating to the above release of claims" from their quotation of the arbitration provision and related analysis. Defendants appear to resort to this tactic because there is no other way to subject this dispute to arbitration under the plain language of the agreement.

Mele may now wish to arbitrate this dispute, but it is not the Court's role to read into a contract terms that the parties did not expressly include, particularly when the parties included those terms in one portion of the contract but not another. See Quadrant Structured Products Co., Ltd. v. Vertin, 992 N.Y.S.2d 687, 694 (2014) ("if parties to a contract omit terms – particularly, terms that are readily found in other similar contracts – the inescapable conclusion is that the parties intended the omission. The maxim *expressio unius est exclusio alterius*, as used in the interpretation of contracts, supports precisely this conclusion"); Ellington v. EMI Mills Music,

---

[2] It is also notable that the Release Agreement does not contain a merger clause. As such, there can be no agreement that any of the agreements contained therein supersede any other agreement not waived by the agreement, such as Mele's restrictive covenant agreements, which remain in full force and effect.

Inc., Index No. 112368/2010, 36 Misc.3d 1228(A), 2011 N.Y. Slip Op. 52526 (U), at *3 (Sup. Ct., N.Y. Cty., Oct. 21, 2011) ("by expressing including only predecessors in interests of Mills Music, Inc., potential future affiliates are excluded from the definition").  As such, the Court should not construe the Release Agreement's arbitration clause applicability "to the above release of claims" to include "GMI's post-employment restrictive covenant claims against Mele" or "all employment-related disputes between GMI and Mele", which were not expressly enumerated or even vaguely referenced "in the above" section explicitly limited to the release of Mele's claims against GMI.

Defendants' motive to rewrite the Release Agreement (or attempt to do so) is obvious.  As the Court noted at the January 9, 2020 hearing:

> [ ] I will note for the record that I am going to approve the TRO, and I am going to do it because I think plaintiff has satisfied the requirements for the TRO.
>
> In terms of the likelihood of success on the merits, … just in terms of the merits of the noncompete, I am not sure I have seen a cleaner case because, as the papers lay out … that what Mr. Mele appears to have done is left GMI to go work for a competitor, Champion Petfoods, running the product lines that he was working against when he worked for GMI.

(Transcript of January 9, 2020 Hearing at pp. 14:22-15:6)  Defendants implausibly suggest that: (1) Mele does not have knowledge of GMI's non-public confidential information and trade secrets through years of direct involvement as a senior member in GMI's and Blue Buffalo's efforts against Champion and its Orijen and Acana products (see Docket Entry No. 20 at p. 12); (2) GMI and Blue Buffalo are not direct competitors in the premium pet food market segment (id. at p. 4); and (3) Mele, notwithstanding his role at GMI with respect to Champion, Orijen, and Acana, will not at the very least inevitably disclose, directly or indirectly, GMI's confidential information and trade secrets -- even though Mele is now tasked with "returning [Champion's] brands to growth

6

… as we continue to drive our strong growth agenda for ORIJEN and ACANA" (as announced by Champion in its press release, annexed as Exhibit B to the Declaration of Eric A. Savage, Docket Entry No. 18).

Faced with Court's assessment and Mele's obvious breach of his restrictive covenants, Defendants resort to linguistic gymnastics to rewrite the Release Agreement to forum shop for a more favorable judge. The Court should not indulge this Hail Mary ploy.

## II.   THE ARBITRABILITY OF GMI'S CLAIMS HAS NOT BEEN DELEGATED TO AN ARBITRATOR.

As set forth above, the parties did not enter into a written agreement to arbitrate any of Mele's restrictive covenant agreements; the parties agreed only to arbitrate *certain* claims relating to Mele's release of claims or any claim that might be covered by that release. The Release Agreement does not purport to delegate any issue to the arbitrator beyond the scope of this agreement to arbitrate. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." See AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986). As such, there is no need for the Court to proceed further, and Defendants' motion should be denied.

GMI's claims against Mele plainly do not fall within the scope of the narrowly tailored arbitration clause applicable to the release of claims or Mele's claims released by the Release Agreement for the reasons articulated *supra* Parts I & II. The Court has the authority to make such a finding because the parties have not delegated to the arbitrator the ability to determine the arbitrability of a claim that is unrelated to Mele's release of claims or a claim released. See Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to

enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Defendants try to avoid this inevitable result by arguing that the incorporation of the AAA rules in the arbitration provision somehow delegated the issue of arbitrability of GMI's current claims to the arbitrator. That is not the case. A delegation clause cannot change the scope of the agreement in which it is contained, or require arbitration of the arbitrability of issues that are so far outside the scope of the arbitration agreement and that the parties never agreed to arbitrate.

The cases upon which Defendants rely do not disturb that general rule because the limited arbitration clause at issue does not cover all disputes arising out of the Release Agreement, it does not refer all disputes arising out of the Release Agreement to arbitration, and it neither subjects all disputes to AAA Rules nor delegates an arbitrator authority to decide all claims relating to the Release Agreement.

The arbitration clauses in the cases cited by Defendants each contained a delegation clause providing that any dispute related to the *entire* agreement would be subject to arbitration and/or decided pursuant to AAA Rules. In Contec Corp. v. Remote Solution Co., 398 F.3d 205 (2d Cir. 2005), the contractual language provided that "[i]n the event of any controversy arising with respect to this Agreement . . . . such controversy shall be determined by arbitration … in accordance with the Commercial Arbitration Rules of the American Arbitration Association". Id. at 208. No such language exists in the Release Agreement in this case.

In Salas v. Universal Credit Services, LLC, No. 17 CV 2352 (JLS), 2019 WL 1242448 (S.D. Cal. Mar. 18, 2019), the broad arbitration clause similarly stated that "[i]n the event of any controversy … relating to this agreement ….including any determination of the scope of

applicability of this agreement to arbitration, shall be determined by arbitration . . . . The parties agree that the arbitration shall be administered by the American Arbitration Association pursuant to its rules and procedures." Id. at *2. As such, although it was not clear whether the parties agreed to arbitrate the merits of all of plaintiff's claims, the parties plainly agreed to arbitrate any dispute concerning the arbitrability of those claims. Id. at *3.

Similarly, in Vertiv Corp. v. Svo Building One, LLC, No. 18 CV 1776 (RGA), 2019 WL 145953 (D. Del. Apr. 2, 2019), the provision at issue stated that "[e]xcept for matters requiring immediate injunctive relief, all claims, disputes or other matters in question between the Parties arising out of or relating in any way to this Agreement [ ] will be resolved pursuant to [AAA Article 9]." Id. at *1.

In Manlove v. Volkswagen Aktiengesellschaft, No. 18 CV 145 (TRM), 2019 WL 2291890 (E.D. Tenn. Jan. 11, 2019), the court compelled arbitration so that an arbitrator could decide the arbitrability of plaintiff's claims for injunctive relief because there was an undisputed arbitration agreement that covered claims between the parties containing a broad delegation clause that "the arbitrator shall have exclusive authority to resolve any Claims, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability or formation of this Agreement." Id. at *2.

In contrast to those four agreements in the cases cited by Defendants, the arbitration clause in this case is tailored such that only "dispute[s] or claim[s] arising out of or relating to the above release of claims" by Mele against GMI is covered, and Mele's assertion of such claims covered by the release is governed by AAA Rules. There is no language in the arbitration clause that provides that AAA Rules apply to issues not addressed in the section dedicated to the "above release of claims", or to the sections following the arbitration provision, or to post-employment

9

restrictive covenant claims by GMI against Mele.  In other words, GMI and Mele did not delegate to the arbitrator any decision at all relating to the restrictive covenant agreements contained in the Release Agreement, and by contract, issues relating to the arbitrability of the restrictive covenant agreements contained in the Release Agreement – and certainly those contained in the four separate stock agreements – cannot now be delegated to an arbitrator for decision.

The parties could have written the Release Agreement to subject all disputes concerning the Release Agreement to arbitration.  But they did not do so.  The parties also could have written the Release Agreement to specifically provide that all employment-related disputes between GMI and Mele would be subject to arbitration.  Again, the Release Agreement contains no such language.  And the parties could have written the Release Agreement to include a parallel obligation imposing arbitration of GMI's restrictive covenant claims against Mele to mirror the language concerning Mele's claims against GMI.  But Mele did not bargain for those terms; the parties knowingly constructed the arbitration provision to apply to one portion of the Release Agreement (relating to the Mele's claims against GMI) but not the other (pertaining to Mele's restrictive covenants).  See Lasalle Bank ant. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (contract interpretation "that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible"); Reyes v. Metromedia Software, Inc., 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012) (court must evaluate disputed language in the context of entire agreement to safeguard against adopting an interpretation that would render any individual provision superfluous); Mastrocovo v. Capizzi, 87 A.D.3d 1296, 1298 (4th Dep't 2011) ("Under the standard canon of contract construction *expression unius est exclusio alterius* … the fact that the agreement refers only to the cohabitation prong of section 248 compels us to conclude that the parties did not intend to include the second prong").

The Court should not indulge Defendants' claim that only an arbitrator can decide whether GMI's claims against Mele is subject to arbitration when there is no arbitration agreement governing GMI's claims. GMI's claims against Mele clearly do not fall within the narrow scope of the arbitration provision in the Release Agreement. Cf. Mehler v. Terminix Int'l Co., 205 F.3d 44, 49-50 (2d Cir. 2000) (clause providing for arbitration of "any controversy or claim … arising out of or relating to" agreement is "a classically broad one"); Collins & Aikman Products Co. v. Buildling Systems, Inc., 58 F.3d 16, 19 (2d Cir. 1995) (clause requiring arbitration of "[a]ny claim or controversy arising out of or relating to this agreement" is "the paradigm of a broad clause.").

### III. THE FOUR STOCK AGREEMENTS DO NOT CONTAIN ARBITRATION PROVISONS

Even if the Court were to find that GMI's claims pursuant to the Release Agreement is subject to arbitration or that an arbitrator should decide the question, there is no arbitration provision in any of the four stock agreements at issue in this case. And, as set forth *supra*, the arbitration provision in the Release Agreement does not cover GMI's claims against Mele arising out of the stock agreements. As such, this federal action may and should proceed with GMI's claims premised on those four agreements and maintain the temporary restraining order. This is particularly true given the nature of the injunctive relief requested by GMI.

### IV. THE TEMPORARY RESTRAINING ORDER SHOULD REMAIN IN PLACE IN THE EVENT THAT ARBITRABILITY OF GMI'S CLAIMS IS REFERRED TO AN ARBITRATOR

In the event that the Court compels arbitration to decide the arbitrability of Plaintiff's claims against Mele and Champion, the Court should stay this matter pending the arbitrator's ruling rather than dismiss it. See 9 U.S.C. § 3; Manlove, 2019 2019 WL 2291890, at *4. Further, during any stay, the Court's Temporary Restraining Order should remain in effect until and unless an arbitrator decides that GMI's claims are arbitrable. See Suchodolski Assoc. v.

Cardell Fin. Corp., No. 03 Civ. 4148 (WHP), 2003 U.S. Dist. LEXIS 24993, at *16-17 (S.D.N.Y. Dec. 9, 2013) (granting motion to convert the existing TRO to a preliminary injunction pending resolution of the underlying dispute in arbitration); see also Morgan Stanley Smith Barney, LLC v. Abel, No. 18 CV 141-J-34MCR, 2018 U.S. Dist. LEXIS 18359, *11 (M.D. Fla. Feb. 5, 2018) ("the Court determines that good cause exists to extend the TRO and stay the current proceedings pending arbitration before FINRA"); Robbins Co. v. JCM Northlink LLC, No. C16-646 (RSL), 2016 U.S. Dist. LEXIS 105180, at *12 (W.D. Wash. Aug. 9, 2016) ("[T]he Court has determined that it is appropriate to grant JCM's motion to dismiss. The preliminary injunction will remain in effect until dissolved or modified by the arbitration tribunal or this Court."); Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 919 F. Supp. 1047, 1055 (E.D. Ky. 1994) (injunction to remain in effect until modified or dissolved by the court or arbitration panel); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin, No. 91 C 2324, 1991 WL 83163, 1991 U.S. Dist. LEXIS 6210, at *20 (N.D. Ill. May 9, 1991) (extending "TRO until July 1, 1991, or until the arbitration panel is able to address whether the TRO should remain in effect").  Defendants should not be allowed to benefit from gamesmanship, premised on an implausible interpretation that defies plain English, to inflict further injury to GMI.

### V. CHAMPION CANNOT INVOKE ARBITRATION AGAINST GMI

At the outset, Champion seeks to compel arbitration against GMI on the false premise that there is an arbitration agreement that covers GMI's claims against Mele. Accordingly, Champion's request is moot because no such arbitration agreement covers the dispute pending before the Court.  But even entertaining the alternate reality in which the arbitration clause covers GMI's restrictive covenants claims against Mele, Champion's motion should nonetheless be denied: Champion was not a signatory to the Release Agreement between GMI and Mele and GMI had no reason to believe that it was entering into any agreement to

arbitrate claims related to misconduct by Champion or any of Mele's future employers. Therefore, Champion cannot compel arbitration against GMI. See Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (arbitration agreements "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract"); see also Republic of Iraq v. BNP Paribas USA, 472 F. App'x 11, 14 (2d Cir. 2012) ("even if the contract between the [signatories] [could] give rise to third-party claims, there [was] no evidentiary basis for concluding that the [signatories] bound themselves to resolve such claims through arbitration").

Arbitration of claims against a non-signatory is not warranted simply because "a relationship . . . may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them." Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008). Rather, "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Id.

At the time of the Release Agreement, neither GMI nor Mele had a contractual relationship with Champion and there was no basis for GMI to believe that Mele's future employer would compel arbitration for its own tortious conduct against GMI. As in Sokol, "there would be no unfairness" in allowing GMI, the victim of (among other things) tortious interference by Champion, to insist that, "while [it] agreed to arbitration with [its] contractual counterparty … [it] in no way consented to extent that agreement to [the entity] which tortuously subverted [its] rights under the agreement." Id. at 362; see also Winter Inv'rs, llc v. Panzer, No. 14 Civ. 6852 (KPF), 2015 WL 5052563 (S.D.N.Y. Aug. 27, 2015) (in action alleging breach of employment agreement,

13

denying non-signatory's motion to compel arbitration against plaintiff, even though the issues raised in claims against signatory and non-signatories were intertwined).

## **CONCLUSION**

For the foregoing reasons, Plaintiff General Mills respectfully requests that the Court deny Defendants' motion to dismiss and compel arbitration, and for such other and further relief as the Court deems just and proper.

Date:   January 17, 2020
        New York, New York

/s/
Eric A. Savage, Esq.
Gary Moy, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York  10022.3298
212.583.9600

*Attorneys for Plaintiff*
*General Mills, Inc.*