UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENERAL MILLS, INC.,

           Plaintiff,

    -against-

CHAMPION PETFOODS USA, INC. and MODESTINO MELE,

           Defendants.

No.: 20 Civ. 181 (KMK)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE THE TEMPORARY RESTRAINING ORDER**

Eric A. Savage
Gary Moy
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022
212.583.9600

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PAGE

PRELIMINARY AGREEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. THE COURT SHOULD REAFFIRM THE TEMPORARY RESTRAINING ORDER BECAUSE PLAINTIFF HAS A LIKELIHOOD OF SUCCESS ON THE MERITS OF THE DTSA CLAIM AND THE OTHER CLAIMS THAT DEFENDANTS HAVE IGNORED IN THEIR MOTION ............................................... 2

    A. GMI Has A Likelihood of Success on the Merits and/or Can Demonstrate A Sufficient Serious Question Going to the Merits to Make Each of its Claims Fair Grounds For Litigation ........................................................ 2

        1. Defend Trade Secrets Act Claim ............................................................... 2

            a. GMI's Trade Secrets Are Protectable ............................................ 3

            b. Mele Misappropriated and Will Inevitably Disclose Trade Secrets ............................................................................................ 6

    B. GMI Will Suffer Irreparable Harm Absent Injunctive Relief .............................. 11

    C. A Balancing of the Equites Tips in Favor of Granting Preliminary Injunctive Relief ................................................................................................... 14

II. THE DISPUTED ARBITRATION CLAUSE DOES NOT WARRANT DISMISSAL OF THIS ACTION ....................................................................................... 15

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Andino v. Fischer,
　555 F. Supp. 2d 418 (S.D.N.Y. 2008)...................................................................................2

Avery Dennison Corp. v. Kitsonas,
　118 F. Supp. 2d 848 (S.D. Ohio 2000) .................................................................................9

Chubb Ina Holdings Inc. v. Chang,
　No. 16 CV 2354 (BRM) (DEA), 2017 U.S. Dist. LEXIS 16744, 2017 WL
　499682 (D.N.J. Feb. 7, 2017)................................................................................................7

Computer Assocs. Intern. v. Quest Software, Inc.,
　333 F. Supp. 2d. 688 (N.D. Ill. 2004) .................................................................................10

Covenant Aviation Sec., LLC v. Berry,
　15 F. Supp. 3d 813 (N.D. Ill. 2014) .....................................................................................3

Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.,
　420 F. Supp. 2d 866 (N.D. Ill. 2006) .................................................................................12

Estee Lauder Cos. v. Batra,
　430 F. Supp. 2d 158 (S.D.N.Y. 2006)............................................................................11, 13

ExpertConnect, LLC v. Fowler,
　No. 18 Civ. 4828 (LGS), 2019 WL 3004161, 2019 U.S. Dist. LEXIS 114931
　(S.D.N.Y. July 10, 2019) ..................................................................................................2, 4

Faiveley Transport Malmo AB v. Wabtec Corp.,
　559 F.3d 110 (2d Cir. 2009)................................................................................................11

Foodcomm Int'l v. Barry,
　328 F.3d 300 (7th Cir. 2003) ..............................................................................................12

Free Country Ltd. v. Drennen,
　235 F. Supp. 3d 559 (S.D.N.Y. 2016)................................................................................7, 8

Gen. Sec., Inc. v. Commer. Fire Sec. Inc.,
　No. 17 CV 1194 (DRH) (AYS), 2018 WL 3118274, 2018 U.S. Dist. LEXIS
　105794 (E.D.N.Y. June 25, 2018) ...............................................................................4, 5, 8

GoHealth, LLC v. Simpson,
　No. 13 C 2334, 2013 WL 6183024 (N.D. Ill. Nov. 26, 2013)...............................................3

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.,
    922 F. Supp. 2d 435 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 210 (2d Cir. 2014) ............................. 2

IBM v. Papermaster,
    No. 08 Civ. 9078 (KMK), 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008) ................. 10, 13

IDG USA, LLC v. Schupp,
    416 F. App'x 86 (2d Cir. 2011) .................................................................................... 11

Inflight Newspapers, Inc. v. Magazines In-Flight, LLC,
    990 F. Supp. 119 (E.D.N.Y. 1997) ................................................................................. 9

Jano Justice Sys., Inc. v. Burton,
    636 F. Supp. 2d 763 (C.D. Ill. 2009) ............................................................................ 11

Johnson Controls, Inc. v. A.P.T. Critical Sys, Inc.,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004) .......................................................................... 12

Lakeview Tech., Inc. v. Robinson,
    446 F.3d 655 (7th Cir. 2006) .......................................................................................... 4

Marsh USA Inc. v. Schuhreimen,
    183 F. Supp. 3d 529 (S.D.NY. 2016) ........................................................................... 15

Master Tech Prods., Inc. v. Prism Enters., Inc.,
    No. 00 C 4599, 2002 WL 475192 (N.D. Ill. Mar. 27, 2002) .......................................... 4

Medtech Prods. Inc. v. Ranir, LLC,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008) ............................................................................ 4

Mickey's Linen v. Fischer,
    No. 17 C 2154, 2017 WL 3970593 (N.D. Ill. Sept. 8, 2017) ............................... 4, 5, 12

Oneida Grp., Inc. v. Steelite Int'l U.S.A., Inc.,
    No. 17 CV 957 (ADS) (AKT), 2017 U.S. Dist. LEXIS 206717 (E.D.N.Y. Dec.
    15, 2017) ......................................................................................................................... 9

Payment Alliance Int'l, Inc. v. Ferreira,
    530 F. Supp. 2d 477 (S.D.N.Y. 2007) .......................................................................... 13

Tesla Wall Sys, LLC v. Related Cos., L.P.,
    No. 17 Civ. 5966 (JSR), 2017 U.S. Dist. LEXIS 207932 (S.D.N.Y. Dec. 15,
    2017) ....................................................................................................................... passim

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE

Ticor Title Ins. Co. v. Cohen,
   173 F.3d 63 (2d Cir. 1999)..................................................................................................11

Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,
   73 F. Supp. 3d 209, 236 (S.D.N.Y. 2014).........................................................................11, 14

Vendavo v. Long,
   397 F. Supp. 3d 1115 (N.D. Ill. 2019) ............................................................................. *passim*

**Statutes**

18 U.S.C. § 1836(b)(1) & (3)................................................................................................6

18 U.S.C. § 1836(b)(1) & (3)(A) .........................................................................................2

18 U.S.C. § 1839(3) ............................................................................................................3

**PRELIMINARY AGREEMENT**

Plaintiff General Mills, Inc. ("GMI") submits this memorandum of law in opposition to Defendants' application to vacate the Temporary Restraining Order entered on January 9, 2020. As discussed below, the restraints are appropriate and necessary to protect the legitimate business interests and proprietary information of GMI. The Court acted properly, based on the five separate documents to which Defendant Modestino Mele ("Mele") is a party and which bar him from engaging in the very work that Champion Petfoods USA, Inc. ("Champion") hired him to do. The Temporary Restraining Order fairly protects the confidential information of GMI and ensures that Mele will not be working for the same brands that he worked against while employed at a senior position at GMI.

Mele's self-serving Declaration, while proclaiming his good intent, instead reinforces the threat that GMI legitimately sees him posing to its business. The Declaration does nothing to refute the supporting Declarations which confirm that Mele acquired and participated in the development of highly proprietary trade secret information about GMI's products and business plans (including its research concerning and response to *counter* Orijen and Acana). Further, the Declaration fails to offer any explanation of how Mele's current assignment to help of Champion to *grow* its Orijen and Acana brands -- as Champion announced in its own press release – will not implicate his use of GMI's information. Defendants attempt to downplay Mele's new role by referencing alleged restraints that they have adopted. However, a careful reading of Mele's Declaration reveals that Champion is allowing Mele to continue his work to grow the Orijen and Acana brands and expand their distribution in existing sales channels, in direct competition with GMI and Blue Buffalo's premium pet food products.

Under these circumstances, courts have routinely held that even the *threatened disclosure* of trade secret information, pursuant to the Defend Trade Secrets Act (or the parallel

1

state analogue), warrants a temporary restraining order to enjoin an individual's employment with and/or activity on behalf of a new employer that is a direct competitor.  The Court should deny Defendants' motion to vacate the Temporary Restraining Order for the reasons set forth in GMI's original moving papers and because GMI has adequately alleged protectable trade secrets and the actual or threatened use of such information.

## ARGUMENT

**I.   THE COURT SHOULD REAFFIRM THE TEMPORARY RESTRAINING ORDER BECAUSE PLAINTIFF HAS A LIKELIHOOD OF SUCCESS ON THE MERITS OF THE DTSA CLAIM AND THE OTHER CLAIMS THAT DEFENDANTS HAVE IGNORED IN THEIR MOTION**

"In the Second Circuit, a plaintiff seeking a preliminary injunction must establish: '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 922 F. Supp. 2d 435, 439 (S.D.N.Y. 2013), aff'd, 764 F.3d 210 (2d Cir. 2014).  The same standard applies to an application for a temporary restraining order.  See Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

**A.   GMI Has A Likelihood of Success on the Merits and/or Can Demonstrate A Sufficient Serious Question Going to the Merits to Make Each of its Claims Fair Grounds For Litigation**

**1.   Defend Trade Secrets Act Claim**

A court may enjoin misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") where: (1) the information is a trade secret used or intended for use in interstate or foreign commerce, and (2) has been, or is threatened to be, misappropriated.  See 18 U.S.C. § 1836(b)(1) & (3)(A); see also ExpertConnect, LLC v. Fowler, No. 18 Civ. 4828 (LGS), 2019 WL 3004161, 2019 U.S. Dist. LEXIS 114931, at *15-16 (S.D.N.Y. July 10, 2019).

2

### a. GMI's Trade Secrets Are Protectable

Under the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" if: (1) "the owner thereof has taken reasonable measures to keep such information secret"; and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

At this early stage, it is sufficient to describe generally the trade secret information and GMI's efforts to keep it confidential. See Tesla Wall Sys, LLC v. Related Cos., L.P., No. 17 Civ. 5966 (JSR), 2017 U.S. Dist. LEXIS 207932, at *24 (S.D.N.Y. Dec. 15, 2017) ("there is no heightened pleading requirement on actions brought under the DTSA"); Covenant Aviation Sec., LLC v. Berry, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) ("courts have found allegations to be adequate in instances where the information and the efforts to main its confidentiality are described in general terms") (applying DTSA and parallel Illinois statute); GoHealth, LLC v. Simpson, No. 13 C 2334, 2013 WL 6183024, at *12 (N.D. Ill. Nov. 26, 2013) (identification of trade secret as processes, systems, and technology that allowed call center to respond quickly adequate to state a claim).

Several categories of information at issue in this case constitute protectable trade secrets, including, but not limited to:

- Financial and business information, such as long-term plans, marketing strategies, profit margins, sales reports pertaining to the revenue generated by customers and/or GMI's products, projects that GMI is working on. See Declaration of Tom Morton ("Morton

3

Decl."), Docket Entry No. 17, at ¶¶ 9-12; Tesla, 2017 U.S. Dist. LEXIS 207932, at *24 (internal pricing information is trade secret); Oneida Grp., Inc. v. Steelite Int'l U.S.A., Inc., No. 17 CV 957 (ADS) (AKT), 2017 U.S. Dist. LEXIS 206717, at *7 (E.D.N.Y. Dec. 15, 2017) (business strategy, market strategy, product margins and costs, and customer sales forecasting are trade secrets); Medtech Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 804 (S.D.N.Y. 2008) ("strategic information regarding price, distribution, and marketing; brand strategies; and confidential business relationships, have been found to constitute trade secrets"); Vendavo v. Long, 397 F. Supp. 3d 1115, 1135 (N.D. Ill. 2019) (financial information, including "sales pipelines" and "sales revenue reports" are trade secrets); Master Tech Prods., Inc. v. Prism Enters., Inc., No. 00 C 4599, 2002 WL 475192, at *5 (N.D. Ill. Mar. 27, 2002) (trade secret "may include a compilation of confidential business and financial information");

- Proprietary methods and formulas, such as composition and formulations of products and products in development. See Morton Decl. at ¶¶ 16-17; Tesla Wall Sys., 2017 U.S. Dist. LEXIS 207932, at *24 (work product, research, and engineering designs are trade secrets); Vendavo, 397 F. Supp. 3d at 1132 (information produced by plaintiff's efforts to identify and solve pricing issues for clients is trade secret);

- Customer information, such as customer-specific proposals or marketing strategy, products requested or purchased by specific customers, revenue generated by customer's purchases. See Morton Decl. at ¶¶ 16-17; Oneida, 2017 U.S. Dist. LEXIS 206717, at *7 (expected pricing of customer-specific designs and customer-specific account strategies are trade secrets); Vendavo, 397 F. Supp. 3d at 1132 (customer-specific information, including "pain points" and "solutions developed" for clients are trade secrets.); Mickey's Linen v. Fischer, No. 17 C 2154, 2017 WL 3970593, at *9 (N.D. Ill. Sept. 8, 2017) (customer purchasing preferences, contract terms, pricing, expirations, and renewal terms and discounts are trade secrets);

4

- Customer lists. See ExpertConnect, 2019 U.S. Dist. LEXIS 114931, at *10-11 (client lists and client preferences are trade secrets); Gen. Sec., Inc. v. Commer. Fire Sec. Inc., No. 17 CV 1194 (DRH) (AYS), 2018 WL 3118274, 2018 U.S. Dist. LEXIS 105794, at *13 (E.D.N.Y. June 25, 2018) (customer lists can constitute trade secrets); Lakeview Tech., Inc. v. Robinson, 446 F.3d 655, 656 (7th Cir. 2006) (plans, pricing and customer lists were considered trade secrets); Vendavo, 397 F. Supp. 3d at 1134 (names and contact information for customers, including identities of decision makers, are trade secrets if kept secret); Mickey's Linen, 2017 WL 3970593, *9 (customer list identifying top customers, highest revenue producing customers, are trade secrets).

Defendants contend that Mele does not have knowledge of any confidential information because, whatever information he had about sales and marketing or the product itself, GMI's product, *i.e.*, Carnivora, is now public. (See Docket Entry No. 20 at p. 17) This contention is not supportable. First, as set forth in the Morton Declaration, Mele has knowledge of GMI's three-year plan, which has not yet been fully implemented and therefore not public; whether intentionally or not, Mele will be able to advise Champion to counter or maneuver around those plans.

Further, although Carnivora is available to the market, the information leading to its creation, as well as GMI's research and analyses of Carnivora and how to market and position in sales channels against competing brands, is not public. Such information has value because even products that were considered and rejected or tried and failed could be used directly or indirectly to Champion's benefit. See Vendavo, 397 F. Supp. 3d at 1142 (noting "unfair advantage by avoiding the costly process of actually discovering" this information). Additionally, while Defendants allege that Mele did not take any documents containing confidential information with him, "the fact that the information contained in the trade secrets at issue can be obtained through

5

proper means or retained via casual memory does not preclude a finding that the information constitutes a trade secret." Gen. Sec., 2018 U.S. Dist. LEXIS 105794, at *14.

In any event, the above-described categories of information are not generally known to the public and have significant commercial value. A competitor with access to GMI's material could use it to: improve or design new products to undercut GMI's competitive advantage and/or its product differentiation and positioning; undermine pricing; target customers and sales channels; tailor proposals specific to those customers; and induce those customers to forego or reduce business with GMI for Champion's products. With knowledge of the strengths and weaknesses of GMI's products – assessments which are entirely internal to GMI and not publically available – Mele is in a position to design or participate in the design of products and marketing plans for Champion's benefit and to GMI's detriment.

GMI has engaged in reasonable efforts to maintain the secrecy of its confidential and trade secret information, including through confidentiality agreements and restricting access its products, customer information, and business and strategic plans to few, select personnel. See Vendavo, 397 F. Supp. 3d at 1136 (employer took reasonable efforts to keep information secret by "implement[ing] technological security" such as limiting access to information, requiring employees to sign non-disclosure agreements, and training employees on security).

      b.  **Mele Misappropriated and Will Inevitably Disclose Trade Secrets**

The Court has the power to enjoin both "actual" and "threatened" misappropriation—both are present here. See 18 U.S.C. § 1836(b)(1) & (3). "Misappropriation" means disclosure or use of a trade secret by a person "who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the

6

trade secret, or derived from or through a person who owed such a duty." Tesla Wall Sys., 2017 U.S. Dist. LEXIS 207932, at *25.

In its effort to vacate the restraints, Defendants focus exclusively on GMI's DTSA claim (perhaps recognizing that there is no defense to the breach of the restrictive covenants contained in the five documents to which Mele is a party). Defendants argue that the DTSA claim is supported only by conclusory and groundless assertions. However, there is no heightened pleading requirement on actions brought under the DTSA. See Tesla Wall Sys., 2017 U.S. Dist. LEXIS 207932, at *24; Chubb Ina Holdings Inc. v. Chang, No. 16 CV 2354 (BRM) (DEA), 2017 U.S. Dist. LEXIS 16744, 2017 WL 499682, at *10 (D.N.J. Feb. 7, 2017) ("there is no heightened pleading standard for a [DTSA] claim") (internal quotation omitted).

Judge Rakoff's decision in Tesla Wall Sys., LLC v. Related Cos., L.P., No. 17 Civ. 5966 (JSR), 2017 U.S. Dist. LEXIS 207932 (S.D.NY. Dec. 15, 2017), rather than his earlier decision in Free Country Ltd. v. Drennen, 235 F. Supp. 3d 559 (S.D.N.Y. 2016), is instructive. In fact, in Free Country, Judge Rakoff originally granted the temporary restraining order which was similar to the order at issue here. The decision in Free Country, upon which Defendants rely, was issued after a three day evidentiary hearing to test plaintiff's claims, id. at 563, which is an opportunity that Defendants seek to preclude with their motion to vacate the TRO (and by their unilateral decision to cancel Mele's deposition which had been scheduled for January 16, 2020). The sensitive information at issue in this case, enumerated *supra* and in the Morton Declaration, is far broader in scope than the client lists, basic and publicly available pricing information, and *decades*-old designs (the import and inevitable use of which plaintiff did not establish) in Free Country. See id. at 566-67. Moreover, in Free Country, the plaintiff (unlike GMI) did not argue that it would lose an indeterminable amount of business or suffer loss of customer goodwill. Id. at 568. And, unlike this case, Free Country did not involve a non-compete

provision and the plaintiff failed to establish – after an evidentiary hearing – that defendants would inevitably disclose such information. Id. at 567-68.

By contrast, the threat in this case is specific and the circumstances unique: Mele was directly and personally involved in GMI's response to counter Champion's Orijen and Acana products but is now tasked with growing Orijen and Acana on Champion's behalf. As the Court opined at the January 9, 2020 hearing, "I am not sure I have seen a cleaner case [.]." (Transcript of January 9, 2020 Hearing at pp. 14:22-15:6) The Court should not vacate the restraints on Mele and Champion.

Rather than Free Country, Judge Rakoff's decision in Tesla Wall Sys., LLC v. Related Cos., L.P., No. 17 Civ. 5966 (JSR), 2017 U.S. Dist. LEXIS 207932 (S.D.N.Y. Dec. 15, 2017), is instructive. In that case, Judge Rakoff denied a motion to dismiss a DTSA claim where plaintiff alleged "Defendants' misappropriation of Tesla's trade secrets is ongoing" and they "continue using Tesla's trade secrets to obtain business as a result of their misappropriation". Id. at *25-26. In denying the motion, Judge Rakoff noted, "[i]f Tesla is able to substantiate its allegations, it is likely to be able to show an 'act of misappropriation' … in the form of defendants continued use of its trade secrets". Id.

Here, GMI has alleged that Mele – who has a duty to maintain the secrecy of GMI's information – acquired confidential and trade secret information through years of service, including GMI's efforts to counter Champion's Orijen and Acana products, and has used and will use such information in service for Champion benefit to help grow its Orijen and Acana brands, as Champion announced in its press release introducing Mele as its Chief Customer Officer. Further, Champion knew and has reason know the confidential nature of the information Mele had about GMI's business, its products, and its plans (as reflected in Champion's communications with GMI, see Exhibit A to the Declaration of Michael J. Sheehan, Docket Entry No. 21) -- and

nonetheless persisted with employing Mele in a position to oversee brands he worked against while employed at GMI.  See Gen. Sec., 2018 U.S. Dist. LEXIS 105794, at *12 (allegations that defendants are contacting and soliciting plaintiff's customers and that defendants' prior employment provided access to confidential information "provide support for the inference Defendants have misappropriated Plaintiff's trade secrets").

In any event, "under state law and the DTSA, the allegation of a threat of misappropriation is sufficient."  Oneida, 2017 U.S. Dist. LEXIS 206717, at *8; see also Inflight Newspapers, Inc. v. Magazines In-Flight, LLC, 990 F. Supp. 119, 125 (E.D.N.Y. 1997) (granting motion for a preliminary injunction, noting that "the plaintiffs need not establish that the information was actually used, but need only show that the use and disclosure of an employer's protected confidential information is likely to occur."); Avery Dennison Corp. v. Kitsonas, 118 F. Supp. 2d 848, 854 (S.D. Ohio 2000) ("An injunction may be issued if there is 'actual or threatened' misappropriation of a trade secret[].").  The DTSA recognizes a cause of action for "inevitable disclosure" of trade secrets—*i.e.*, a "plaintiff may prove a claim of trade secret misappropriation by demonstrating that a defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." Vendavo, 397 F. Supp. 3d. at 1139.

Courts employ a three-factor analysis to evaluate whether a defendant will inevitably disclose trade secrets in his new position: (1) level of competition between the former employer and new employer; (2) whether the employee's position with the new employer is comparable to the position he held with the former employer; and (3) the actions the new employer has taken to prevent the former employee from using or disclosing trade secrets of the former employer.  Vendavo, 397 F. Supp. 3d at 1140.

It is hard to imagine a context in which these factors aptly apply than here.  GMI and Champion are direct competitors in that Blue Buffalo and Champion each manufacture and

9

sell premium pet foods. See Inflight Newspapers, 990 F. Supp. at 125 (disclosure was likely where the defendant "provide[d] *an identical product* to its customers as previously provided by [the plaintiff]. In sum, [the defendant] represented to the airlines that their past expertise would be used in formulating competitive bids and providing an identical product"). Moreover, the jobs that Defendant Mele held with GMI and the one he will fill at Champion, as best can be determined from Champion's January 8, 2020 announcement, are substantially similar; in both positions, Mele is tasked with generating growth for his employer's products, including developing marketing strategies and working with customers to understand and meet their business needs. See Computer Assocs. Intern. v. Quest Software, Inc., 333 F. Supp. 2d. 688, 696 (N.D. Ill. 2004) (finding likelihood of success that plaintiff will prevail on state trade secret statute claim where former employees were "hired and assigned to tasks that were nearly identical to those they performed while at [plaintiff's company]").

Through Mele, Champion would be able to improve existing competing products or create new products with financial, customer and any technical information that Mele acquired at GMI – and thereby further erode GMI's market advantage. GMI's confidential and trade secret information would enable Champion to avoid the significant risk and enormous costs associated with time-consuming research, trial and error, and the potentially large losses associated with a poor product or one which does not meet the needs of the market or one that is priced or positioned incorrectly.

If Mele is allowed to use "even the information in [his] head" that is based on GMI's confidential and trade secret information, Mele and Champion will have an "unfair advantage by avoiding the costly process of actually discovering" this information and be able to design products and pitch customers using same. See Vendavo, 397 F. Supp. 3d at 1142. Such a situation will cause GMI harm in unquantifiable ways. See Papermaster, 2008 WL 4974508, at

10

*9 ("it is likely that [employee] inevitably will draw upon his experience and expertise in microprocessors and the 'Power' architecture, which he gained from his many years at IBM, and which Apple found so impressive, to make sure that the iPod and iPhone are fitted with the best available microprocessor technology and at a lower cost"); Batra, 430 F. Supp. 2d at 179 (irreparable harm when there is a substantial risk that the defendant will disclose trade secrets).

Indeed, there is a rebuttable presumption of irreparable harm when there is a "danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets." Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009). Here, there is a danger that, once disclosed, the value of GMI's confidential information and trade secrets will be impaired irrevocably. (See Morton Decl. at ¶ 21)

**B.    GMI Will Suffer Irreparable Harm Absent Injunctive Relief**

"To establish irreparable harm, a plaintiff must establish both that an injury is likely absent the injunction and that the injury cannot be adequately remedied with money damages." IDG USA, LLC v. Schupp, 416 F. App'x 86, 88 (2d Cir. 2011). There is no question that GMI will suffer irreparable harm without injunctive relief. There is a "presumption of irreparable harm" in "cases of trade secret misappropriation." Jano Justice Sys., Inc. v. Burton, 636 F. Supp. 2d 763, 767 (C.D. Ill. 2009). This is because "it would be essentially impossible to determine the costs [competitor] unjustly avoided by using these trade secrets, or the damage to Plaintiff's sales that could be caused by allowing [former employee] to use its own secrets against it." Vendavo, 397 F. Supp. 3d at 1144.

Indeed, it is well-settled that the loss of "future sales, goodwill and entire client accounts" cannot be easily quantified. See Uni-World Capital, L.P. v. Preferred Fragrance, Inc., 73 F. Supp. 3d 209, 236 (S.D.N.Y. 2014) (noting that the loss of client relationships and good will

11

can only be remedied by monetary damages in unusual circumstances); see also Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999) ("it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"); Mickey's Linen, 2017 WL 3970593, at *18 ("loss of business that [the former employees] have caused and threaten to cause and the profits lost with such business are unquantifiable at this time").

It is "precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'" Mickey's Linen, 2017 WL 3970593, *18; see also Foodcomm Int'l v. Barry, 328 F.3d 300, 304 (7th Cir. 2003) (complete loss of client relationship constitutes irreparable injury); Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc., 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006) (loss of goodwill, competitive position, and customer relationships constitute irreparable harm "oftentimes fatal to businesses, [that] cannot be readily calculated and cured by an award of monetary damages.").

Mele's violation of his non-disclosure and non-compete agreements "threaten to cause [GMI] irreparable harm by luring away the business of a number of long-term [GMI] clients." Johnson Controls, Inc. v. A.P.T. Critical Sys, Inc., 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004). As GMI's Senior Vice President of Global Sales, Mele was intimately involved in the development and design of GMI's premium pet food products and fully familiar with GMI's strategic thinking, as well as in soliciting and working with prospective customers and distribution channels.

To fulfill his duties, Mele had access to and participated in the development of an enormous range of confidential and trade secret information of the most sensitive nature about GMI and its customers and business relationships. This highly restricted information included, among other things, products and products in development, financial budgets and business plans,

12

virtually all of GMI's sales accounts, customer-specific business needs, and information about GMI's competitors. In fact, Mele has knowledge of GMI's business plans for the *next three years*.

GMI and Champion each manufacture and sell premium pet foods. By joining Champion, Mele is servicing GMI's competitor for whose benefit Mele has used and/or inevitably will use confidential information acquired at GMI – *e.g.*, knowledge of GMI products and their compositions, strengths and weaknesses, as well as the pricing methods and customer preferences – to design and improve Champion's competing premium pet foods, as well as develop and position products to create new market opportunities for Champion.

Through Champion's employment of Mele, Champion has gained access to and Mele inevitably will use confidential and trade secret information about GMI's products and future product development (including their customer relationships), as well as customer preferences and GMI's strategic plans. Champion will benefit significantly from the transfer of Mele's knowledge of GMI's confidential information to Champion, which will erode the advantage that GMI developed through considerable investment of time, effort, and money. As such, Mele and Champion are in an unfair, advantageous position to challenge and harm GMI's business. See IBM v. Papermaster, No. 08 Civ. 9078 (KMK), 2008 WL 4974508, at *8 (S.D.N.Y. Nov. 21, 2008) ("Because [defendant] has been inculcated with some of IBM's most sensitive and close-guarded technical and strategic secrets, it is no great leap for the Court to find that Plaintiff has met its burden of showing a likelihood of irreparable harm."); Payment Alliance Int'l, Inc. v. Ferreira, 530 F. Supp. 2d 477, 482 (S.D.N.Y. 2007) ("[E]ven if [defendant] acted with the best of intentions, he may unintentionally transmit information gained through his [former employment] during his day to day contact with his new employer.") (quotation omitted); Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) ("Even where a trade secret has not been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed, where ...

13

the movant competes directly with the prospective employer and the transient employee possesses highly confidential or technical knowledge concerning [] marketing strategies, or the like.").

GMI is entitled to protect its market position as secured by the limited duration non-compete and non-disclosure provisions in the agreements binding Mele. If Mele is allowed to assist Champion with growing the Orijen and Acana brands or otherwise assisting Champion on product development, marketing and business strategies, and customer relationships, that advantage is irretrievably lost. As a result of Mele's conduct, GMI will lose customer relationships and the goodwill built up over the years (which would other produce indeterminate revenue in the future), neither of which can be measured with monetary damages. See e.g., Uni-World Capital, 73 F. Supp. 3d at 236.

**C.     A Balancing of the Equites Tips in Favor of Granting Preliminary Injunctive Relief**

As set forth in GMI's moving papers, GMI has demonstrated a likelihood of success on the merits and, at the very least, has raised sufficiently serious questions going to the merits of each claim, the Court should re-affirm its prior Order and deny Defendants' request to vacate the temporary restraining order. GMI merely seeks to maintain the status quo and prevent Mele from breaching his contractual obligations, breaching his fiduciary duties, and engaging in tortious and unfair business practices. The agreements do not prevent Mele from working or Champion from engaging in business – as it had before employing Mele – in a manner which fairly competes with GMI without GMI's confidential and trade secret information.

On the other hand, if the Court were to vacate the Temporary Restraining Order, Mele and Champion will be allowed to compete unfairly with GMI using GMI's confidential and trade secret information and undermining the investment of substantial time, resources, and goodwill that GMI made in its products and customer relationships. As such, the balance of the

equities decidedly weigh in favor of GMI.  See Marsh USA Inc. v. Schuhreimen, 183 F. Supp. 3d 529, 536-37 (S.D.NY. 2016).

## II. THE DISPUTED ARBITRATION CLAUSE DOES NOT WARRANT DISMISSAL OF THIS ACTION

For the reasons set forth in GMI's opposition to Defendants' motion to dismiss and compel discovery, GMI and Mele did not agree to arbitrate GMI's restrictive covenant claims against Mele.  As such, the Court should need vacate the TRO on that basis.  Further, in the event that the Court decides that an arbitrator must decide the arbitrability of certain of GMI's claims against Mele, the Court should nonetheless stay this action and maintain the TRO pending the outcome of arbitration.

## CONCLUSION

For the foregoing reasons, Plaintiff GMI requests that the Court deny defendants' motion to dissolve the temporary restraining order, and for such other and further relief as the Court deems just and proper.

Date:   January 17, 2020
        New York, New York

_/s/_
Eric A. Savage, Esq.
Gary Moy, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York  10022
212.583.9600

*Attorneys for Plaintiff*
*General Mills, Inc.*
