UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENERAL MILLS, INC.,

                Plaintiff,

     -against-

CHAMPION   PETFOODS   USA,   INC.   and
MODESTINO MELE,

             Defendants.

No.: 20 Civ. 181 (KMK)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR A TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY**

---

Eric A. Savage
Gary Moy
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022
212.583.9600

*Attorneys for Plaintiff*

## PRELIMINARY AGREEMENT

Despite the protestations of Defendants Champion Petfoods USA, Inc. ("Champion") and Modestino Mele ("Mele"), certain facts remain undisputed. Champion's Orijen and Acana brands compete directly with those of Blue Buffalo. Mele, as head of the sales organization for Blue Buffalo, had broad input into Blue Buffalo's sales strategy for all product lines, particularly Wilderness and Carnivora, with full access to confidential information of Blue Buffalo, a subsidiary of General Mills, Inc. ("GMI"). He knew Blue Buffalo's customers, profit margins, sales strategies, business plans, go-to market plans and of the company's strengths and potential weaknesses. As Rick Budney's Reply Declaration confirms, Mele and Champion were on notice in November that Mele's employment at Champion during the restricted period placed him in violation of the Release Agreement, the stock option award documents and the restricted stock unit award documents. Champion's own announcement left no doubt that the projects it had assigned to Mele put him in direct competition with the brands for which he worked at Blue Buffalo.

Given these uncontested facts, the restraints imposed by the Court must remain in place. Not only do these facts fully establish GMI's entitlement to a preliminary injunction, Defendants have refused to make Mele available for deposition despite the provisions of the Court's January 9, 2020 Order so permitting. Defendants have not turned over any materials or identified a Rule 30(b)(6) witness. Having failed to produce the discovery that this Court specifically ordered, Defendants should not be allowed to contend that (1) Mele did not have access to and knowledge of GMI's confidential and trade secret information, (2) Mele did not work on GMI products which competed against Champion or its Orijen and Acana brands, (3) Mele was not involved in the development of products and strategies designed to counter Orijen and Acana,

1

such as positioning GMI's Carnivora product, and (4) Mele is now tasked to grow the Orijen and Acana brands, as announced in Champion's announcement.

These facts demonstrate Mele's clear breach of his obligation to refrain from working, for one year, on a brand or product competing with a GMI brand or product on which Mele worked. GMI has demonstrated Mele's inevitable use and/or disclosure of GMI's confidential and trade secret information in service of Champion's competing brands. This proof of Mele's violation of five written obligations fully supports preliminary injunctive relief.

Faced with Mele's breaches and Champion's allowing such violations to continue, Defendants rely on conclusory proclamations – that GMI has not been allowed to test through a deposition of Mele or Champion - that Mele is not violating his restrictive covenants and that he allegedly does not need information acquired at GMI and Blue Buffalo to perform his duties at Champion. These untested denials are unavailing; since Mele had no pet food experience whatsoever before his work at Blue Buffalo, the only industry knowledge he can use for his new employer is what he learned at Blue Buffalo. Further, Defendants have failed to identify *any* Champion product on which Mele is working which does *not* compete with GMI and Blue Buffalo's premium pet food products. GMI believes that no such product exists.

Defendants claim that they voluntarily adopted restraints on Mele's activity, *e.g.*, that Mele, for one year, will not work on expanding Champion's products -- which they fail to identify -- into *new* sales channels. Translated, this means that Mele will be working on growing the Orijen and Acana brands and expanding their distribution in *existing* sales channels, in direct competition with GMI and Blue Buffalo. The effort to sanitize Mele's responsibility to coach and hire individuals "to optimize the team" (Docket Entry No. 31-2 at ¶ 9) is misleading. Mele's efforts are designed to help and coach the sales team to compete against GMI and teach employees how to position Champion's products as compared to other brands, including Blue Buffalo.

2

Defendants further misrepresent the record by creating impression that GMI has "unclean hands" because it knew about Mele's breaches for over two months but did nothing. In reality, hoping to avoid litigation, Plaintiff attempted to negotiate an amicable resolution with Defendants' counsel, but it was not until January 8, 2020 that GMI had clear information, from Champion's own announcement, that Champion had assigned to Mele work which placed him in direct competition with the brands on which he had been working as a GMI employee, all in direct violation of the Release Agreement, the two stock option award documents and the two restricted stock unit award documents.

Under these circumstances, the Court should maintain the restraints set forth in the January 9, 2020 Order.

## I.        MELE'S BREACH OF CONTRACT IS MANIFEST

As set forth in GMI's moving papers, and not seriously disputed by Defendants, Mele's breach of the restrictive covenants contained in five separate agreements is manifest and nothing in Defendants' opposition memorandum dispels that reality. Mele is working for a direct competitor, which develops and markets premium pet foods. Blue Buffalo and Champion compete for access to the same sales channels in the same pet foods segment. As Senior Vice President of Global Sales, Mele was involved in developing relationships with retailers to expand customer visibility of and access to Blue Buffalo products. As Champion's Chief Customer Officer, Mele will be performing the same job duties, calling upon the same customers and business contacts, and competing in the same locations in which he formerly worked for GMI -- with full insight into his former employer's products and product pipeline, marketing strategies, and business plans.

Defendants argue that Mele's responsibility will not "require" him to use or disclose GMI's confidential information. This argument is hard to understand. Even if he were to limit his activities to "coaching the sales team", he will inevitably be coaching them on how to win sales

3

and shelf space from Blue Buffalo products, and specifically those for which he worked.  Further, not only have Defendants barred GMI the Court-ordered discovery regarding that claim, they fail to provide any analysis about why Mele's working on Orijen and Acana does not constitute work on a product or brand that competes with Blue Buffalo, even in existing sales channels, or how such responsibilities will not lead to inevitable disclosure of GMI's confidential and trade secret information.  Instead, Defendants resort to alleging that GMI failed to produce evidence regarding Mele's specific responsibilities (evidence which resides solely in Defendants' control) or that Mele does not have to use any of GMI's confidential information, when Defendants refused to allow GMI to obtain that evidence in advance of the preliminary injunction hearing

## II.    DEFENDANTS' FAILURE TO PRODUCE DISCOVERY BARS THEM FROM ARGUING THAT PLAINTIFF HAS NOT SUBMITTED SUFFICEINT EVIDENCE

If Defendants disagreed with the Court's January 9, 2020 Order granting expedited discovery, they could have filed a motion for reconsideration pursuant to Local Rule 6.3. Similarly, they could have sought a protective order when Plaintiff, on January 10, 2020, served its discovery requests and notice for Mele's deposition for January 14, 2020.  They did neither. Instead, Defendants requested, and GMI agreed, to reschedule the deposition for January 16, 2020. However, on that morning, Defendants canceled the deposition and did not inform Plaintiff that they did not intend to comply with the Court's Order – notwithstanding multiple communications that day.  Plaintiff was still under the impression that Defendants intended to comply with the Court's Order, until Defendants' late-day submission on January 17, 2020 in the form of a purported discovery dispute which they believed justified withholding Mele's deposition in violation of the Court's unambiguous Order.  (See Docket Entry No. 31)

Having disregarded the Court's Order, Defendants argue that the application for a preliminary injunction should be denied because Plaintiff failed to provide the evidence it sought

and this Court allowed.   Rather than reward Defendants' tactics, the Court should leave the restraints in place.

## III.   PLAINTIFF HAS ESTABLISHED THE GROUNDS TO SUPPORT A PRELIMINARY INJUNCTION

The record fully supports the request for a preliminary injunction.  As set forth in detail in Plaintiff's memorandum of law in opposition to Defendants' motion to vacate the temporary restraining order, Plaintiff has fully established likelihood of success on its claims pursuant to the Defend Trade Secrets Act ("DTSA") (Amended Complaint, Sixth Count) under either a theory of actual or threatened misappropriation.  (See Docket Entry No. 28) This, in addition to proof of irreparable harm and hardships tipping in favor of GMI, and the facts demonstrating the likelihood of success on the First through Fifth Counts of the Amended Complaint, warrants injunctive relief.

Defendants argue that Mele did not retain any documents containing GMI's confidential and trade secret information and that plaintiff does not identify a specific document or its trade secrets with specificity.   Leaving aside Defendants' failure to produce discovery concerning such representations, Mele does not deny that he has knowledge of GMI's confidential and trade secret information.  See Vendavo v. Long, 397 F. Supp. 3d 1115, 1142 (N.D. Ill. 2019) (with "even the information in [his] head", defendants may have an "unfair advantage by avoiding the costly process of actually discovering" this information); Gen. Sec., Inc. v. Commer. Fire Sec. Inc., No. 17 CV 1194 (DRH) (AYS), 2018 WL 3118274, 2018 U.S. Dist. LEXIS 105794, at *14 (E.D.N.Y. June 25, 2018) ("the fact that the information contained in the trade secrets at issue can be obtained through proper means or retained via casual memory does not preclude a finding that the information constitutes a trade secret"); see also IBM v. Papermaster, No. 08 Civ. 9078 (KMK), 2008 WL 4974508, at *9 (S.D.N.Y. Nov. 21, 2008) (Your Honor noting, "it is likely that

[employee] inevitably will draw upon his experience and expertise …, which he gained from his many years at IBM, and which Apple found so impressive, to make sure that the iPod and iPhone are fitted with the best available microprocessor technology and at a lower cost").

Courts have confirmed that is sufficient to describe generally the trade secret information and GMI's efforts to keep it confidential.  See Tesla Wall Sys, LLC v. Related Cos., L.P., No. 17 Civ. 5966 (JSR), 2017 U.S. Dist. LEXIS 207932, at *24 (S.D.N.Y. Dec. 15, 2017) (in granting TRO, noting that "there is no heightened pleading requirement on actions brought under the DTSA"); Covenant Aviation Sec., LLC v. Berry, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (allegations adequate "where the information and the efforts to main its confidentiality are described in general terms") (applying DTSA and parallel Illinois statute).  Plaintiff identified several categories of information that constitute protectable trade secrets, including:

- Financial and business information, such as GMI's three-year plan, marketing strategies, profit margins, sales reports regarding revenue generated by customers and/or GMI's products and ongoing projects. See Declaration of Tom Morton ("Morton Decl."), Docket Entry No. 17, at ¶¶ 9-12; Tesla, 2017 U.S. Dist. LEXIS 207932, at *24 (internal pricing information is trade secret); Oneida Grp., Inc. v. Steelite Int'l U.S.A., Inc., No. 17 CV 957 (ADS) (AKT), 2017 U.S. Dist. LEXIS 206717, at *7 (E.D.N.Y. Dec. 15, 2017) (business strategy, market strategy, product margins and costs, and customer sales forecasting are trade secrets);  Vendavo, 397 F. Supp. 3d at 1135 (financial information, including "sales pipelines" and "sales revenue reports" are trade secrets);

- Proprietary methods and formulas, such as composition and formulations of products and products in development.  See Morton Decl.at ¶¶ 16-17; Tesla Wall Sys., 2017 U.S. Dist. LEXIS 207932, at *24 (work product, research, and engineering designs are trade secrets);

- Customer information, such as customer-specific proposals or marketing strategy, products requested or purchased by specific customers, revenue generated by customer's purchases. See Morton Decl.at ¶¶ 16-17; Oneida, 2017 U.S. Dist. LEXIS 206717, at *7 (expected pricing of customer-specific designs and customer-specific account strategies are trade secrets); Mickey's Linen v. Fischer, No. 17 C 2154, 2017 WL 3970593, at *9 (N.D. Ill. Sept. 8, 2017) (customer purchasing preferences, contract terms, and pricing are trade secrets);

- Customer lists. See ExpertConnect, 2019 U.S. Dist. LEXIS 114931, at *10-11 (client lists and client preferences are trade secrets); Gen. Sec., 2018 U.S. Dist. LEXIS 105794, at *13; Mickey's Linen, 2017 WL 3970593, *9.

These categories of information are not generally known to the public, and GMI keeps the information protected through confidentiality agreements and by restricting access to its products, customer information, and business and strategic plans to select personnel. See Vendavo, 397 F. Supp. 3d at 1136. With knowledge of the strengths and weaknesses of GMI's products and their positioning in the market, Mele -- whether coaching Champion's sales team, or participating in the design of Champion's existing products, or managing Champion's efforts to expand distribution in existing sales channels – will be able to advise Champion how to maneuver around GMI's products and business plans, as well as participate in design and marketing to grow sales of Orijen and Acana at the expense of GMI's lost consumers.

Defendants' contend that they will not use or disclose GMI's confidential information, and deride as conclusory Mele's inevitable disclosure of such information. However, Defendants fail to analyze the elements of the claim or distinguish applicable case law. A former employee, whether inadvertently or not, under certain circumstances may directly or indirectly use or disclose a former employer's trade secret information. See Oneida, 2017 U.S. Dist. LEXIS 206717, at *8 ("under state law and the DTSA, the allegation of a threat of misappropriation is

7

sufficient"). "Even where a trade secret has not yet been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed where, as here, the movant competes directly with the prospective employer and the transient employee possesses highly confidential or technical knowledge concerning [] marketing strategies, or the like." Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (internal quotations omitted).

As set forth in GMI's moving papers and opposition to Defendants' motion to vacate the TRO, courts have found that immediate injunctive relief is fully warranted in light of a heightened risk that employees like Mele working for a direct competitor will inevitably disclose their prior employer's trade secrets.  See, e.g., Vendavo, 397 F. Supp. 3d at 1142; Papermaster, 2008 U.S. Dist. LEXIS 95516, *22-*23; Mickey's Linen, 2017 WL 3970593, *12-13; Payment Alliance Int'l, Inc. v. Ferreira, 530 F. Supp. 2d 477, 482 (S.D.N.Y. 2007); Batra, 430 F. Supp. 2d at 174; Inflight Newspapers, 990 F. Supp. at 125.  That risk is amplified here because Mele was personally involved in GMI's response to Champion's Orijen and Acana products, but is now tasked with growing Orijen and Acana on Champion's behalf. Defendants' purported self-imposed restraints do not prevent Mele from engaging in such conduct (which limit only the scope of competition, not all competition as required by his restrictive covenants during the covered period).

Defendants' only defense appears to be that Blue Buffalo captures a much larger segment of the market than Champion. However, and in all likelihood, this is precisely why Champion wanted to employ Mele and why his role in managing the growth of Orijen and Acana poses a threat to GMI's business.  By hiring Mele, Champion has gained access to and Mele inevitably will use information about GMI's products and their positioning, as well as customer preferences and GMI's strategic plans.  Champion will benefit significantly from the transfer of Mele's knowledge of GMI's confidential and trade secret information, which will erode the advantage that GMI developed through considerable investment of time, effort, and money.  GMI

is entitled to protect its market position as secured by the limited duration non-compete and non-disclosure provisions in the five agreements binding Mele.

## IV.   GMI HAS CLEAN HANDS AND WILL CONTINUE TO SUFFER IRREPARABLE HARM

There is "a presumption of harm to the plaintiff in cases of trade secret misappropriation." Computer Assocs. Int'l v. Quest Software, Inc., 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004); see also Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009). Defendants have failed to rebut this presumption by demonstrating that GMI will not suffer any harm if the injunction is not granted. Instead, Defendants contend that GMI cannot show irreparable harm in part due to GMI's purported delay in moving for injunctive relief, but this misrepresents the record of what Plaintiff knew and when. Plaintiff was unaware (because defense counsel did not disclose) that Mele's responsibilities included growing the Orijen and Acana brands until January 8, 2020 – the day after which Plaintiff commenced suit. Moreover, prior to litigation, GMI had been engaged in negotiations with Defendants' counsel to resolve the dispute amicably.   (See Docket Entry No. 21-1, 2)

Under these circumstances, courts have rejected the argument that an alleged delay should preclude a TRO. See Gemshares LLC v. Lipton, No. 17 C 6221 (MFK), 2019 WL 3287838, 2019 U.S. Dist. LEXIS 121067, at *11 (N.D. Ill. July 21, 2019) (noting that, although former employer did not request an injunction at the outset of the case, "during that time period, [former employer] continually negotiated with [defendant] in an effort to resolve their dispute"); CertainTeed Ceilings Corp. v. Aiken, No. 14 CV 3925 (MMB), 2014 U.S. Dist. LEXIS , at *39 (E.D. Pa. Oct. 24 , 2014) ("Given that [plaintiff's] minor delay in filing suit appears to have been attributable to negotiations between the parties, the Court concludes that the timing of [plaintiff's] motion for a preliminary injunction does not prove a lack of irreparable harm."); see also Louis

Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 104 n.20 (2d Cir. 2012) ("plaintiff's decision to try to bring a speedy resolution to the entire matter rather than expend its resources on temporary relief does not mean that the plaintiff had no interest in a speedy resolution of its claims against the defendants"); Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 39 (2d Cir. 1995) ("a delay caused by a plaintiff's good faith efforts to investigate an infringement does not rebut the presumption of irreparable harm").

## V.   THERE IS NO AGREEMENT TO ARBITRATE GMI'S CLAIMS AGAINST MELE

Faced with Court's assessment at the January 9, 2020 hearing and Mele's breach of his five restrictive covenants, Defendants attempt to forum shop for arbitration by omitting key terms (*i.e.*, "relating to the above release of claims") from an inapplicable clause in the Release Agreement. As set forth in GMI's opposition papers (Dkt. No. 27), the arbitration clause in that document is tailored such that it covers only "dispute[s] or claim[s] arising out of or relating to the above release of claims" by Mele. No language in the arbitration clause provides for arbitration of issues not addressed in the section dedicated to the "above release of claims", or to the sections following the arbitration provision, or to post-employment restrictive covenant claims by GMI against Mele. Moreover, the four other stock agreements do not contain any arbitration provision, meaning that claims brought thereunder must go forward in this Court.

## CONCLUSION

For the foregoing reasons, Plaintiff GMI requests that the Court grant Plaintiff's motion for temporary restraining order, preliminary injunction, and expedited discovery, and for such other and further relief as the Court deems just and proper.

Date:   January 21, 2020
        New York, New York

                                        /s/Eric A. Savage
                            _____
                            Eric A. Savage, Esq.
                            Gary Moy, Esq.
                            LITTLER MENDELSON, P.C.
                            900 Third Avenue
                            New York, New York  10022
                            212.583.9600

                            *Attorneys for Plaintiff*
                            *General Mills, Inc.*