UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENERAL MILLS, INC,

               Plaintiff,

      -against-

CHAMPION PETFOODS USA, INC. and
MODESTINO MELE,

           Defendants.

Civil Action No. 20-181 (KMK)(JCM)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

---

Eric A. Savage, Esq.
Gary Moy, Esq.
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

*Attorneys for Plaintiff*

TABLE OF CONTENTS

PAGE

FACTS ........................................................................................................................ 2

ARGUMENT ............................................................................................................. 4

I.     THE FACT THAT ARBITRABILITY WILL BE DETERMINED
       SEPARATELY DOES NOT SUPPORT A STAY OF THE PRELIMINARY
       INJUNCTION ................................................................................................. 4

II.    DEFENDANTS HAVE FAILED TO OFFER ANY NEW EVIDENCE OR
       AUTHORITY SUPPORTING THEIR APPLICATION .................................. 10

CONCLUSION ......................................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Express Financial Advisors, Inc. v. Thorley*,
  147 F.3d 229 (2d Cir. 1998)........................................................................5, 6, 8

*Associated Press v. U.S. Dep't of Def.*,
  395 F. Supp. 2d 17 (S.D.N.Y. 2005).................................................................11

*In re Beacon Assocs. Litig.*,
  818 F. Supp. 2d 697 (S.D.N.Y. 2011)...............................................................11

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
  784 F.3d 887 (2d Cir. 2015).............................................................................6, 7

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
  910 F.2d 1049 (2d Cir. 1990)...............................................................................6

*Citizens Secs., Inc. v. Bender*,
  No. 19 CV 916 (MAD), 2019 WL 3494397, 2019 U.S. Dist. LEXIS 128571
  (N.D.N.Y. Aug. 1, 2019) .......................................................................................7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. ___, 139 S. Ct. 524 (2019).............................................................6, 7, 8

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
  729 F.3d 99 (2d Cir. 2013).................................................................................11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*,
  756 F.2d 1048 (4th Cir. 1985) .............................................................................9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*,
  844 F.2d 726 (10th Cir. 1988) .............................................................................9

*Metro. Life Ins. Co. v. Bucsek*,
  919 F.3d 184 (2d Cir. 2019)..................................................................................7

*Ortho Pharm. Corp. v. Amgen, Inc.*,
  882 F.2d 806 (3d Cir. 1989).................................................................................9

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*,
  52 F.3d 1373 (6th Cir. 1995) ...............................................................................9

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Polsby v. St. Martin's Press, Inc.*,
No. 97 Civ. 690(MBM), 2000 WL 98057 (S.D.N.Y. Jan. 18, 2000) ......................................11

*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Company of New York, Inc.*,
749 F.2d 124 (2d Cir. 1984)..............................................................................................5, 6, 8

*Sauer-Getriebe KG v. White Hydraulics, Inc.*,
715 F.2d 348 (7th Cir. 1983) ...................................................................................................9

*SecondMarket Holdings, Inc. v. Chakford*,
106 A.D.3d 606 (1st Dep't 2013) ............................................................................................2

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995).....................................................................................................11

*Tasktop Technologies US Inc. v. McGowan*,
2018 WL 4938570 (D. Del. 2018) .........................................................................................12

*Teradyne, Inc. v. Mostek Corp.*,
797 F.2d 43 (1st Cir. 1986).......................................................................................................9

*Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*,
609 F.3d 975 (9th Cir. 2010) ....................................................................................................9

*U.S. Sec. Assoc., Inc. v. Cresante*,
Index No. 161144/2015, 2016 N.Y. Misc. LEXIS 3662 (Sup. Ct., N.Y. Cty. Oct. 7, 2016) ................................................................................................................................2

*Vertiv Corp. v. Svo Building One, LLC*,
2019 WL 1454953 (D. Del. April 2, 2019)............................................................................12

*Wine Not Int'l v. 2atec, LLC*,
No. 06-CV-117-T-234TGW, 2006 US Dist. LEXIS 46218 (M.D. Fl. May 18, 2006) ......................................................................................................................................9

Plaintiff General Mills, Inc. ("GMI") submits this memorandum in opposition to the application of defendants Champion Petfoods USA, Inc. ("Champion") and Modestino Mele ("Mele") (collectively "Defendants") to stay the preliminary injunction issued by the Court on January 23, 2020 pending Defendants' appeal to the United States Court of Appeals for the Second Circuit.

There are two central flaws in Defendants' arguments.  First, and most critically, the Court did not hold that the matter was being referred to arbitration for all purposes. Instead, the Court ruled that it would "let the arbitrator decide the arbitrability of plaintiff's claim". (Jan. 23, 2020 Tr. at 13).   Thus, until and unless an arbitrator rules that the central dispute must be heard in an arbitral forum, this Court retains jurisdiction over the matter.  The Court distinctly did not rule that the matter must be heard by the American Arbitration Association ("AAA"), only that the AAA could be called on to decide if the Release Agreement (Dkt. No. 15-1) bars GMI from enforcing its rights in this Court.   Pending such a ruling, and as the Court confirmed to Defendants' counsel, "The order remains under the power of the court." (Jan. 23, 2020 Tr. at 21)

The Court's retention of this power is essential because it eliminates the possibility that Defendants would use any gap in time between the dissolution of the preliminary injunction and further proceedings, either before the AAA or this Court, in which Mele could engage in the type of conduct that he agreed in five separate contracts that he would not do.  Providing Defendants with the relief sought here would render Mele's post-employment restrictions a nullity, even as he retains the benefits that GMI provided to him in exchange for the post-employment restrictions by way of stock options, stock units and severance pay.

Second, as to whether GMI had met its burden to establish entitlement to the temporary restraining order or the preliminary injunction, Defendants' papers have essentially restated the

facts and arguments that the parties thoroughly briefed and argued, but without identifying any manifest errors – such as controlling data or decisions overlooked by the Court or previously unavailable information -- which might warrant a change in the outcome.  No such circumstances are present here and Defendants' application for extraordinary relief should be denied.

## **FACTS**

The facts in this matter, including those underlying the basis for and the timing of the application for emergent relief, have been set forth in detail in GMI's previous submissions (Dkt. Nos. 15, 16, 17, 18, 36 and 37) and will not be restated here in detail.  However, a few items need to be emphasized.

GMI sought emergency relief on January 9, 2020, one day after receiving a copy of an announcement issued by Champion on January 8, 2020 which stated not only that Mr. Mele had been hired as its Chief Customer Officer, but that he "will be focused on returning [Champion's] brands to growth through enhanced partnerships with our customer base, providing you with the high level of service, sales and marketing tools required to help you grow your business as we continue to drive our strong growth agenda for ORIJEN and ACANA" (Dkt. No. 18-2).   As discussed at length in GMI's moving papers, these are Champion's flagship brands and a significant portion of Mele's responsibilities through his July 31, 2019 departure from GMI[1]

---

[1] Defendants suggest that since Mele was terminated without cause, GMI is barred from enforcing the post-employment restrictions.  However, Mele signed the Release Agreement, which contained the post-employment restrictions, so that he could receive severance pay to which he was not otherwise entitled.  His acceptance of the benefits of the Release Agreement compels his adherence to its other terms, including the restrictions.  *See SecondMarket Holdings, Inc. v. Chakford*, 106 A.D.3d 606, 607 (1st Dep't 2013) (separation agreement's restrictive covenants were not invalid because the separation agreement constituted a contract independent of previous employment agreement and employee "received additional benefits other than those he was entitled to under previous employment contracts"); *U.S. Sec. Assoc., Inc. v. Cresante*, Index No. 161144/2015, 2016 NY Slip Op 31886(U), 2016 N.Y. Misc. LEXIS 3662, *10 (Sup. Ct., N.Y. Cty. Oct. 7, 2016) (restrictive covenants valid where terminated employee "offered post-employment severance benefits … in exchange for preserving the non-compete and non-solicitation provisions in the Employment Agreement").

entailed developing and leading the competitive efforts being taken against them by Blue Buffalo Enterprises, where he had worked since 2016.

Our office provided advance notice to counsel for Defendants of the pending application but no one from Defendants' counsel appeared at the hearing. Instead, counsel for Defendants, by email, asked counsel for GMI to advise the Court of its opposition to the issuance of any injunctive relief. That position included the following request: "Last, please also inform the Court that it is Defendants' position that the first matter it should consider, after the issue is fully briefed, is Defendants' Motion to Compel Arbitration. We request ten days to brief and file that motion."

As the Court and Defendants are aware, GMI's counsel read into the record on January 9, 2020 the comments of defense counsel verbatim, thereby making known to the Court the Defendants' position on arbitration. Further, at the oral argument on that day, the Court questioned GMI's counsel on the applicability of the arbitration language contained in the Release Agreement. Nonetheless, and with an explicit understanding that Defendants contended that arbitration was the proper forum for this dispute, the Court issued the temporary restraining order after finding that GMI had established the appropriate legal and factual bases for the relief. (Dkt. Nos. 6, 10)

Since January 9, 2020 when the temporary restraining order was entered, the issues regarding the propriety of the issuance of the temporary restraining order and arbitration have been thoroughly briefed to the Court, both by Defendants (Dkt. Nos. 19 – 23, 31) and by GMI (Dkt. Nos. 27, 28, 35-37).

Following approximately two hours of oral argument on January 23, 2020, the Court directed that an arbitrator would be required to determine if the post-employment restrictions contained in the Release Agreement, the Stock Option Grants and the Restricted Stock Unit Awards were in fact arbitrable, a matter which remains in sharp dispute. The Court did not dismiss

the action, but merely held the matter in abeyance pending a decision on arbitrability.  In so doing, it retained the power to enter orders necessary to preserve the status quo which, as it explained on January 23, 2020, did not entail considering the temporary restraining order as the status quo, but "the higher standard . . . because it's the prudent thing to do."  (Jan. 23, 2020 Tr. at 15)

The Court's analysis confirmed that the five separate agreements at issue clearly appeared to bar Mele from engaging in the kind of work that Champion's announcement confirmed he would be doing.  Indeed, it was not clear from Defendants' arguments what work Mr. Mele could do as Champion's Chief Customer Officer which would not violate his agreements with GMI, since his job requires him to help his new employer "as we continue to drive our strong growth agenda for ORIJEN and ACANA".  The Court went on to hold that the restrictions imposed in the five agreements were reasonable in scope and duration and that GMI had established a valid basis for a claim of irreparable harm.

The Court rejected the suggestion that the restraints be dissolved so that Mele could work for Champion "because his employment by Champion violates the agreement."  (Jan. 23, 2020 Tr. at 21)   In essence, Defendants continue to ask that Mele be allowed to do what this Court has twice barred him from doing, without offering any new facts or law to support the positions that they have fully presented.

## **ARGUMENT**

### **I.**

### **THE FACT THAT ARBITRABILITY WILL BE DETERMINED SEPARATELY DOES NOT SUPPORT A STAY OF THE PRELIMINARY INJUNCTION**

Defendants have misapprehended the Court's ruling on arbitrability and its impact on the preliminary injunction to which it found GMI was entitled.  The Court did not hold definitively

that the Release Agreement absolutely compelled the parties to pursue their rights in arbitration, only that an arbitrator would need to decide if that were the case.   Under the Court's ruling, it is entirely possible, and GMI's contends that it is likely, that the arbitrator will hold that the language and structure of the Release Agreement does not support Defendants' contention and that the matter will be heard on the merits in this Court.  GMI has fully briefed and argued its position regarding the Release Agreement and will not reiterate those arguments here.

In that light, the Court's decision to consider and sustain GMI's arguments about the need for injunctive relief is well founded and thoroughly in line with authority which confirms the courts' power to issue injunctions pending arbitration.  In *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Company of New York, Inc.*, 749 F.2d 124 (2d Cir. 1984), the Second Circuit reversed the trial court's denial of a preliminary injunction even as it affirmed the ruling compelling the parties to arbitrate their dispute.  "The fact that a dispute is to be arbitrated, however, does not absolve the court of its obligation to consider the merits of a requested preliminary injunction; the proper course is to determine whether the dispute is 'a proper case' for an injunction." 749 F.2d at 125 (citations omitted).

Similarly, in *American Express Financial Advisors, Inc. v. Thorley,* 147 F.3d 229, 231 (2d Cir. 1998), the Second Circuit vacated the decision of the trial court, which had refused to consider the need for injunctive relief because the ultimate merits would be decided in arbitration.  It explained, "[T]he expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on their merits. Nor is this duty affected by the pro-arbitration policy manifested in the FAA. [citations omitted]"   Unlike here, the arbitration provision in *Thorley* did allow for applications for injunctive relief, but as the Court instructed, that was ultimately irrelevant to the decision, "But where, as here, courts do have the

5

authority to consider the merits of requested injunctions, a contractual provision stating that plaintiffs may seek such relief in a court of competent jurisdiction amply reaffirms what the law already allows." *Id.* at 231.

In *Roso-Lino*, the Second Circuit found that the plaintiff had met all of the requirements for injunctive relief and decided that preservation of the status quo was required although the parties were required to arbitrate the underlying dispute. Defendants' position here is even weaker than that of defendant in *Roso-Lino* because it is as-yet unknown whether the matter will be found to be arbitrable. If a case in which arbitration was a certainty did not deprive the court of the power to issue an injunction, a case in which arbitration may never happen certainly preserves the Court's power to act.

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 910 F.2d 1049, 1053 (2d Cir. 1990), cited by the Court (Jan. 23 Tr. at 14), confirmed that the courts have the right and power to issue injunctions even where the underlying dispute will be arbitrated:

> [T]he pro-arbitration policies reflected in the foregoing Supreme Court decisions are furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of the arbitration through a preliminary injunction. Arbitration can become a "hollow formality" if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute [citations omitted] A district court must ensure that the parties get what they bargained for --- a meaningful arbitration of the dispute . . . The issuance of an injunction to preserve the status quo pending arbitration fulfills the court's obligations under the FAA to enforce a valid agreement to arbitrate.

The Second Circuit again confirmed a court's authority to grant injunctive relief pending resolution of arbitration in *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015) (affirming portion of district court order restraining defendant from engaging in certain commercial activity).

6

Notwithstanding Defendants' contention, nothing in *Henry Schein*, *Inc. v. Archer & White Sales, Inc.,* 586 U.S. ___, 139 S. Ct. 524 (2019) abrogates or otherwise disturbs a court's authority to grant injunctive relief in a case which has been referred to an arbitrator for resolution of the arbitrability of a claim or the merits of the case.  Before *Henry Schein*, even when a contract delegated gateway issues to an arbitrator, certain Courts of Appeals would still decide arbitrability issues if "the argument for arbitration is wholly groundless." *Id.* at 529.  In *Henry Schein*, the Supreme Court merely held that the "wholly groundless" exception was inconsistent with the Federal Arbitration Act and binding precedent.  *Id.*

*Henry Schein* did not delegate all issues related to the case to an arbitrator.  *See Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 195 (2d Cir. 2019) (rejecting interpretation of *Henry Schein* "to mean that a court considering whether the arbitration agreement confers authority over arbitrability on the arbitrators may not consider whether the agreements call for arbitration of the dispute").  In fact, the Supreme Court remanded to the Court of Appeals the issue whether incorporating the AAA rules, as Defendants argue here, "in fact delegated the arbitrability question to an arbitrator." *Henry Schein*, 139 S. Ct. at 531; *see also Bucsek*, 919 F.3d at 195-96 (affirming district court order granting former employer's motion for a preliminary injunction barring former employee from pursuing claims in arbitration rather than in court; finding nothing in arbitration code that "clearly and unmistakably evidences a contractual intent to confer resolution of arbitrability on the arbitrators for a claim such as ["former employee's]"), *cert. denied, Bucsek v. Metro. Life Ins. Co., 2019 U.S. Lexis 5325*, U.S. Oct. 7, 2019).

Even since *Henry Schein*, courts have continued to grant injunctive relief when an issue or the merits of the case has been delegated to an arbitrator for decision.  *See Citizens Secs., Inc. v. Bender*, No. 19 CV 916 (MAD), 2019 WL 3494397, 2019 U.S. Dist. LEXIS 128571, *5 n.1, 15-

16 (N.D.N.Y. Aug. 1, 2019) (following *Benihana* in granting temporary restraining order in breach of contract and trade secrets misappropriation case, and noting that "the Court has jurisdiction to issue a temporary restraining order/preliminary injunction to preserve the status quo pending arbitration").  In other words, *Henry Schein* did not address and, therefore does not disturb the holdings in the *Roso-Lino* line of cases, and Defendants have failed to offer any facts to justify a deviation from the well-established and accepted practice of issuing preliminary injunctions to preserve the status quo pending resolution of arbitration.

The present action illustrates vividly the need for and the propriety of the Court's action. As the Court found, Mele's employment at Champion, in the role described in that company's announcement, places him in stark violation of his multiple agreements with GMI.  The possibility that he will use GMI's information in the service of his new employer, even in that information comes from the knowledge he retained in his head about the premium pet food industry during his three years at Blue Buffalo, is more than sufficient to trigger a claim of irreparable harm.  (Jan 23 Tr. at 19-20)

As such, the present action falls squarely within the contemplation of *Thorley*, where the court taught, "[T]emporary injunctions often foster rather than contradict the policy favoring arbitration.  In many instances, it is by freezing the status quo that the meaningfulness of arbitration is best protected. [citation omitted]  For if events proceed unenjoined, the subject matter of arbitration may be irretrievably altered before an arbitral decision can be reached. [citation omitted],  147 F.3d at 231.  Here, if Mele and Champion are allowed to proceed unenjoined, the confidential information at the core of the case, and GMI's entitlement to protect its commercial interest by not having Mele in competition for a year after his departure, the subject matter of this dispute will have been irretrievably altered.

Defendants' contention that Mele is not earning any salary which is harmful to him and his family may be correct, but the reality is that this problem arises from his own decision to accept employment with one of the very few companies where his work would inevitably place him in conflict with his contractual undertakings.  GMI played no role in his decision and should not be expected to accept the risk of loss of its confidential information based on activities that it did not instigate.

Consequently, the Court's decision to preserve the status quo through a preliminary injunction, and the case law that the Court cited in doing so (Jan. 23 Tr. at 13 – 15), fits squarely within established Second Circuit jurisprudence, and indeed, with the teachings of other courts. *See Wine Not Int'l v. 2atec, LLC*, No. 06-CV-117-T-234TGW, 2006 US Dist. LEXIS 46218 at *32 (M.D. Fl. May 18, 2006) ("The decisions of the First Second, Third, Fourth, Sixth and Seventh Circuits reason that .... the entry of a preliminary injunction actually fosters the FAA's liberal policy toward arbitration by ensuring that the status quo is maintained so that the arbitration proceedings remain meaningful." (citations omitted)); *see also Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1050 (4th Cir. 1985); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1380 (6th Cir. 1995); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 351 (7th Cir. 1983); *Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726, 726-28 (10th Cir. 1988).

The stay sought by Defendants would operate to the prejudice of GMI and its rights, particularly since the arbitral proceeding directed by the Court is not even the merits hearing that Defendants submit would ultimately be held by the AAA.  It is instead merely a proceeding to

determine if the AAA is required to assume responsibility for deciding the matter. Only by maintaining in place the injunctive relief to which GMI demonstrated an entitlement can the status quo be protected, irreparable injury be prevented, and the parties enabled to proceed to the merits on an unaltered playing field, whether in this Court (as GMI contends) or the AAA.  Defendants' application should therefore be denied.

## II.

## DEFENDANTS HAVE FAILED TO OFFER ANY NEW EVIDENCE OR AUTHORITY SUPPORTING THEIR APPLICATION

Defendants' position is striking in that it fails to take into account any of the factual findings that the Court made regarding (a) the reasonableness of the restraints, (b) the injury to GMI if Mele is allowed to go to work for a prime competitor (c) to work on the brands he fought against through July 2019, and (d) the irreparable harm the company would suffer if Mele is allowed to use his industry knowledge, which derives exclusively from his three years at GMI, in the service of Champion.

The "restrictions put in place voluntarily by Defendants" (Def. Mem. at 10) are, for the reasons discussed at oral argument, insufficient --- as the Court apparently recognized.  Defendants "restrictions" would allow Mele, among other things to "coach" members of the sales team (Dkt. Nos. 31-1 ¶24(ii), 31-2 ¶9(ii)), which suggests that he will be coaching Champion's sales team on how to compete with the sales team for Blue Buffalo.  Similarly, Mele would be allowed to "oversee Champion's brands in existing channels of distribution in order to manage and drive sales." (Dkt. Nos. 31-1 ¶24 (iii), 31-2 ¶9 (iii)). This means that Mele would – in Defendants' own words – be leading Champion's sales efforts in channels where its products and those of Blue Buffalo are competing for shelf space and customers and that he would be driving sales for the

Orijen and Acana brands.  Defendants failed to respond directly to these fundamental issues at oral argument and have not addressed them on this motion.

Instead, both in their factual and legal arguments, Defendants have placed before the Court the very same contentions and authorities that the Court considered in several sets of papers.  In this sense, the motion is a thinly disguised motion for reconsideration, but one which fails to offer any of the necessary elements to make such a difficult showing.

It is well established that disagreement with a court's ruling does not warrant reconsideration. The standard for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). *See also, Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* 729 F.3d 99, 104 (2d Cir. 2013)  A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Nor is a motion for reconsideration a time to "advance new facts, issues or arguments not previously presented to the Court." *Polsby v. St. Martin's Press, Inc*., No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)  Indeed, a party seeking reconsideration must show either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 702–03 (S.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001)).

Defendants have failed to meet this difficult standard. They have brought forward no new and previously unavailable facts. They have failed to identify any facts that the Court overlooked and which would necessarily change the outcome of the motion. Nothing has changed in the eight days since the preliminary injunction was issued to warrant a revision to the Court's determination.

Instead, Defendants rely on the same legal authorities previously briefed and considered by the Court. Thus, for example, the decision in *Vertiv Corp. v. Svo Building One, LLC*, 2019 WL 1454953 (D. Del. April 2, 2019) that Defendants cite as authority that "the Court should have turned to" (Def. Mem. at 9), was cited in the brief that they filed on January 14, 2020 (Dkt. No. 23 at 6). Similarly, they rely now on *Tasktop Technologies US Inc. v. McGowan*, 2018 WL 4938570 (D. Del. 2018), to which they referred the Court in their January 17, 2020 brief (Dkt. No. 31 at 17, 18, 23) and which the Court discussed (Jan. 23 Tr. at 17).

The reiteration of authority previously offered to and considered by the Court does not support the wholesale reversal of a carefully determined matter. There has been no change in the law since January 23, 2020 and there are no cases that the Court failed to consider which would mandate a different result. Consequently, Defendants' application has no merit and should be denied.

## CONCLUSION

Defendants' dissatisfaction with the restraints imposed by the Court, all of which flow directly from Mele's five agreements expressly limiting his post-employment activity, does not warrant overturning the Court's decision. Their disagreement with the ruling is not by itself grounds to reverse the Court's determination to maintain for GMI the status for which it bargained and gave consideration to Mele, both before and at the time of his termination. There exists no basis, let alone newly discovered facts or crucial overlooked facts or case law, which supports the reversal of the careful and nuanced decision that the Court reached only eight days ago.

12

Defendants' motion should be denied in full.

Dated:  January 31, 2020

<div style="margin-left: 40%">

**LITTLER MENDELSON, P.C.**
Attorneys for Plaintiff


By: */s/ Eric A. Savage*

    Eric A. Savage

900 Third Avenue
New York, New York 10022
212.583.9600

</div>

On the brief:

Gary Moy