

**Littler Mendelson, PC**
900 Third Avenue
New York, New York  10022.3298

Eric A. Savage
212.583.2695 direct
212.583.9600 main
973.215.2620 fax
esavage@littler.com

February 11, 2020

**VIA ECF FILING**

Hon. Kenneth M. Karas, U.S.D.J.
Southern District of New York
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

Re: <u>General Mills, Inc. v. Champion Petfoods USA, Inc. and Modestino Mele</u>
No. 20 Civ. 181 (KMK) (SDNY)

Dear Judge Karas:

We represent plaintiff General Mills, Inc. ("GMI") in the above matter. Pursuant to the Court's Order during the February 6, 2020 conference, GMI writes (i) in further opposition to defendants' letter motion of February 3, 2020 to modify the preliminary injunction issued on January 23, 2020 (Docket Entry No. 48) and (ii) to address the scope of the Court's arbitration referral.

**I.   THE ORDER GRANTING PRELIMINARY INJUNCTION IS PROPER IN SCOPE AND SHOULD NOT BE DISSOLVED**

   **A.   The Geographic Scope of the Restrictive Covenants is Reasonable**

As the Court opined at the January 23, 2020 hearing, the parties have engaged in extensive motion practice since this action commenced. Defendants have had ample opportunity – in the initial appearance that they chose not to attend, a subsequent two-hour oral argument on January 23, 2020, and at least five written submissions to the Court – to contest the propriety of the restrictive covenants binding Mele and the scope of the injunctive relief first issued by the Court on January 9, 2020. However, although defendants repeatedly argued that a global restraint on Mele's employment activity is improper, it was not until their February 3, 2020 application (Dkt. No. 48) that they first argued against such restraint based on Blue Buffalo's claimed withdrawal from certain international markets – which, in substance, is a motion for reconsideration.

"The standard for granting a motion for reconsideration pursuant to Local Rule 6.3 is strict in order to prevent the practice of a losing party examining a decision and then plugging

Hon. Kenneth M. Karas, U.S.D.J.
February 11, 2020
Page 2

the gaps of a lost motion with additional matters." Luv n' Care, Ltd. v. Regent Baby Prods. Corp., 486 F. Supp. 2d 400, 411 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). "[A] motion for reconsideration is not an opportunity to 'advance new facts, issues or arguments not previously presented to the Court,' nor is it a substitute for appeal." In re Optimal United States Litig., 886 F. Supp. 2d 298, 312 (S.D.N.Y. 2012) (quoting In re Fosamax Prods. Liab. Litig., 815 F. Supp. 2d 649, 651 (S.D.N.Y. 2011)); see also Devi v. Silva, 861 F. Supp. 2d 135, 143 (E.D.N.Y. 2012) ("a party is not permitted to raise a new argument in a motion for reconsideration that it failed to raise in the underlying motion").

Defendants could have argued that any injunctive relief restraining Mele's employment activity should not be global because Blue Buffalo withdrew from certain international markets, but they did not do so when they had the opportunity. The Court should not further indulge defendants' attempt to reverse the outcome of an issue that has been thoroughly litigated and decided against them. See Luv n' Care, 986 F. Supp. 2d at 412 ("[parties] may not use a motion for reconsideration to raise new arguments for the first time when they were free to raise them during the original briefing"); Grand Crossing, L.P. v. U.S. Underwriters Ins. Co., No. 13 Civ. 5249 (RJS), 2008 WL 4525400, 2008 U.S. Dist. LEXIS 80833, at *8 (S.D.N.Y. Oct. 6, 2008) ("A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court.") (internal quotation marks and citation omitted).

Even if the Court were to consider defendants' new theory that Blue Buffalo withdrew from certain international markets, the Court should deny defendants' application to modify the preliminary injunction. "[T]he reasonableness of a covenant's scope is not determined by reference to physical distances, but by reference to the area in which a covenantee has an interest the covenants are designed to protect." Weichert Co. of Penn. v. Young, 2007 WL 4372823, at *4 (Del. Ch. Dec. 7, 2007). Delaware law therefore "condones broad geographic restrictions, up to and including non-competes with a global scope . . . when the relevant competitive market is equally broad or global." Avaya, Inc. v. Ali, No. 12-10660 (DJC), 2012 WL 2888474, at *7 (D. Mass. July 13, 2012).

As set forth more fully in GMI's February 4, 2020 submission (Dkt. No. 50), Mele agreed in writing – in five separate documents – that he would "not work on any product, brand category, process or service: (i) on which I worked, or about which I had access to Confidential Information, in the year preceding my termination (including retirement) from General Mills, and (ii) which competes with General Mills products, brand categories, processes, or related services". There is nothing limiting the geographic scope of Mele's obligations and there is no dispute that, while employed by Blue Buffalo as its Senior Vice President – Global Sales, Mele's responsibilities were not limited to the United States and Canada. Nothing in the five agreements allows Mele to use his knowledge gained through his work for Blue Buffalo's North American operations in service of Champion's operations in North America or anywhere else in the world, which would violate 18 U.S.C. § 1839(3). Likewise, there is nothing in the five agreements which

Hon. Kenneth M. Karas, U.S.D.J.
February 11, 2020
Page 3

allows Mele to use his knowledge gained through his work for Blue Buffalo's other international operations in service of Champion's operations in North America or anywhere else in the world.

The problem in this case is that, although defendants repeatedly affirmed that they would not intentionally use GMI's confidential and trade secret information, (1) Mele is nonetheless working for a competitor on competitive products (which itself is a violation of his restrictive covenants), (2) the inevitable disclosure doctrine does not require that a former employer intentionally or directly misuse confidential and trade secret information to warrant injunctive relief, (3) Mele and Champion have been persistently hazy about Mele's precise responsibilities at Champion, and (4) Mele and Champion implicitly acknowledge that Mele is tasked with advancing Orijen and Acana products in competition with GMI and Blue Buffalo products in existing sales channels.

Through their latest application, defendants appear to pivot from being evasive about Mele working on Champion's competing products (Dkt. No. 31-1, ¶s 24(ii), (iii), 31-2, ¶s 9(ii), (iii)) to explicitly acknowledging that Mele <u>will</u> be involved in the marketing of Champion's products, albeit for Champion's international operations. However, as set forth in GMI's February 4, 2020 submission, a global restraint on Mele's employment activity is warranted because defendants have failed to articulate how they would – or could – limit Mele's efforts to advance Champion's products overseas from, directly or indirectly, assisting Champion's competitive efforts against GMI's products in North America. (<u>See</u> Dkt. No. 50 at p. 2) The five agreements governing Mele's post-employment activities bar him from competing with Blue Buffalo's products - period. More than a month after this case began, defendants have yet to identify any function that they propose for Mele which does not directly collide with that prohibition. If Mele were to work for Champion's Latin America division through July 31, 2020, and then could use his knowledge from that work in North America starting on August, 1, he still remains in violation of his restrictive covenants.

Further, the matters now being raised by defendants necessarily involve a deeper understanding of Champion's international operations, without the benefit of any discovery, and potentially subject Blue Buffalo's operations and non-public plans to disclosure without a protective order. The Court should deny defendants' attempt to circumvent Mele's express restrictive covenant obligations.

**B.     Defendants Cite No Controlling Authority Requiring a District Court to Dissolve Injunctive Relief Once a Matter is Before the Arbitrator**

Defendants have not cited any *controlling authority* to contravene Second Circuit case law cited by GMI establishing that district courts may issue a preliminary injunction pending the resolution of arbitration. "Where the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration." <u>Benihana, Inc. v. Benihana of Tokyo, LLC</u>, 784 F.3d 887, 895-96 (2d Cir. 2015). Although

Hon. Kenneth M. Karas, U.S.D.J.
February 11, 2020
Page 4

defendants contend that the Court should dissolve the preliminary injunction once the matter is before an arbitrator, or that the injunction automatically ceases if an arbitrator assumes jurisdiction (Dkt. No. 42), the Second Circuit has not limited the lifespan of a preliminary injunction to the moment that an arbitrator assumes jurisdiction to (1) entertain the merits of the underlying dispute or, as in this case, (2) resolve only the issue of arbitrability.  See Rex Medical L.P. v. Angiotech Pharmaceuticals, 754 F. Supp. 2d 616, 620 (S.D.N.Y. 2010) (where dispute regarding defendant's right to terminate the agreement must go to arbitration, granting preliminary injunction enjoining defendant from terminating agreement "pending the conclusion of arbitration proceedings commenced by [defendant]" and noting "'temporary restraining orders and preliminary injunctions may be, and frequently are, granted in aid of arbitration claims where necessary to avoid irreparable injury'") (quoting Banus v. Citigroup Global Mkts. Inc., No. 09 Civ. 7128 (LAK), 2010 WL 1643780, at *8 (S.D.N.Y. Apr. 23, 2010)); see also Arnold Chase Family, LLC v. UBS AG, No.08 CV 581 (MRK), 2008 WL 3089484, at *3 (D. Conn. Aug. 4, 2008) ( "at least in the Second Circuit, courts have historically entertained requests for provisional remedies *during the pendency of arbitrations*") (emphasis added)).

In Blumenthal v. Merrill Lynch, 910 F.2d 1049 (2d Cir. 1990), the Second Circuit rejected a party's challenge which was premised on the arguments that the district court's injunction pending arbitration abrogates the role of arbitrators as adjudicators of the dispute and that the parties had agreed to submit claims for preliminary injunctive relief to an arbitrator.  Id. at 1052 ("The short answer to these arguments is that they come too late in the day in light of controlling precedent to the contrary.").  In doing so, the Second Circuit noted, "pro-arbitration policies … are furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of arbitration through a preliminary injunction."  Id. at 1053.

The Second Circuit in Blumenthal also rejected the opposing party's proposed "rule of necessity", which would limit a district court's power to issue injunctions pending arbitration to only those situations where the movant establishes that the arbitrators are unable to provide the requested relief in a timely fashion.  Id. at 1054.  In other words, district courts are not required to abstain from granting injunctive relief merely because the matter is before an arbitrator.  "At present, the parties are free to litigate the necessity of an injunction under traditional principles, and a district court may decline to issue one upon being satisfied that there is no point in doing so."  Id.  In this case, the Court has decided that there is a point to granting injunctive relief to prevent irreparable harm to GMI.  (See Transcript of January 23, 2020 Hearing at pp. 14:9-15:1)

In American Express Financial Advisors, Inc. v. Thorley, 147 F.3d 229 (2d Cir. 1998) addressed a similar question presented before this Court: "Must a district court, faced with a request for a preliminary injunction in a case whose underlying merits will ultimately be settled in arbitration, consider the merits of the injunction, or may it leave the question of temporary relief, like the ultimate resolution of the case, to the arbitrator?"

Hon. Kenneth M. Karas, U.S.D.J.
February 11, 2020
Page 5

In Thorley, the plaintiff sought a preliminary injunction pending the outcome of the arbitration when arbitration proceedings had already commenced. Id. at 230. The District Court denied the preliminary injunction and held that arbitration was the proper forum for plaintiff's request. Id. The Second Circuit vacated the order denying the preliminary injunction and remanded for a decision on the merits. Id. at 232. It should go without saying that, if district courts are allowed to grant preliminary injunction while a matter is already proceeding in arbitration, the court may also issue and maintain injunctive relief before and during those proceedings -- at least until a resolution of the merits of the underlying dispute.

Defendants' request would have this Court dissolve the preliminary injunction prematurely, which would lead to a result contrary to Second Circuit *dicta* that "[a]rbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before arbitrators are able to render a decision in the dispute." Blumenthal, 910 F.2d at 1053. Defendants' request to dissolve the preliminary injunction once this matter is before an arbitrator, who is *only* deciding the arbitrability issue, would allow Champion to resume its employment of Mele in violation of his restrictive covenants before the merits of the underlying dispute are even decided and even before the parties litigate the merits before arbitrator – which is the circumstance the Court sought to prevent with the January 9, 2020 temporary restraining order and the January 23, 2020 decision granting GMI's motion for a preliminary injunction.

If, for example an arbitrator decides that the underlying claims are not arbitrable and the matter is returned to this Court, then the Court would have dissolved the preliminary injunction for no reason. In that interim, without a decision by any entity concerning GMI's request for injunctive relief, Champion would be allowed to continue its employment of Mele in a capacity which competes with GMI and Blue Buffalo's products in violation of his five agreements. Further, if the Court were to dissolve the preliminary injunction before a decision on the merits of the underlying dispute, defendants would have the incentive and ability to delay arbitral proceedings, which would allow Champion to continue its employment of Mele during the non-compete period originally scheduled to end in August 2020.[1] See Toyo Tire Holdings of Americas Inc. v. Continental Tire North America, Inc., 909 F.3d 975, 980-81 (9th Cir. 2010) (explaining that the availability of judicial injunctive relief is particularly important in part because "one party to the arbitration often has an incentive to delay arbitration proceedings to its own advantage" and "[e]ven without bad faith by either party, the selection of arbitrators and the constitution of the arbitral panel necessarily takes time"). This outcome is illogical and contrary to Second Circuit authority cited herein and in GMI's prior submissions to this Court.

---

[1] Plaintiff seeks, among other things, an extension of Mele's non-compete period by the amount of time he is found to have violated his restrictive covenants.

Hon. Kenneth M. Karas, U.S.D.J.
February 11, 2020
Page 6

The weight of legal authority and common sense favor denying defendants' request that the Court dissolve the preliminary injunction once the matter is before an arbitrator or order that the injunction dissolves if an arbitrator decides that the matter is arbitrable.

## II. THE COURT'S JANUARY 23, 2020 ORDER UNAMBIGUOUSLY LIMITED THE SCOPE OF THE REFERRAL TO RESOLVING ARBITRABILITY

At the outset, defendants' February 3, 2020 application did not contest the scope of the Court's Order referring the arbitrability issue to arbitration and the Court should not allow defendants to do so in the first instance – in violation of Paragraph II.A of the Court's Individual Rules of Practice – during a conference to address a separate, unrelated issue, *i.e.*, modification of the preliminary injunction.

Moreover, defendants' attempt to "clarify" the scope of the arbitration referral is in substance a motion for reconsideration, which is inappropriate in this instance because (1) defendants did not serve a notice of motion for reconsideration within fourteen days after the Court's decision and, as set forth in GMI's opposition to defendants' motion to stay the preliminary injunction (Dkt. No. 46 at pp. 10-12), (2) did not identify matters or controlling decisions that the Court purportedly "overlooked" in its January 23, 2020 Order.  See Local Civil Rule 6.3.  As such, in process and in substance, defendants did not properly contest the scope of the Court's Order.  Therefore, the Court should deny defendants' belated application to revisit the arbitration referral, which the Court clearly limited to whether GMI's claims in this action is subject to the Release Agreement's arbitration clause.

More specifically, on January 23, 2020, the parties appeared before Your Honor to address GMI's motion for a preliminary injunction, as well as defendants' motions to vacate the temporary restraining order and compel discovery.  (See Transcript of January 23, 2020 Hearing)  Although the Court noted that it was a "close call" on the issue of arbitration (id. at p. 12:20), the Court concluded, "I think the question is sufficiently close enough to tilt in favor of the defense to let the arbitrator decide the arbitrability of plaintiff's claim".  (Id. at p. 13:5-8)  The Court, however, continued: "But it still begs the question whether the Court can still enter a preliminary injunction while that question is being decided by the arbitrator."  (Id. at p. 13:8-10)  In answering, the Court ruled, "Even though I think the question of arbitrability should be decided by the arbitrator, I think that the Court still has the authority to issue a preliminary injunction" (Id. at p. 15:2-4).  Thus, the preliminary injunction issued in favor of GMI remains in place.  The suggestion that an arbitrator – even before the issue of arbitrability has been considered – can or should undo that judicial determination far exceeds the scope of what the Court directed be submitted for consideration by the Association.

In granting GMI's motion for a preliminary injunction, the Court noted, "[t]he rationale that plaintiff gives is right that, otherwise, if a preliminary injunction otherwise should issue because a plaintiff otherwise has satisfied the requirements that need to be satisfied to get an

entry of a TRO or a preliminary injunction, then that means irreparable harm would happen while the issue of arbitrability is decided by the arbitrator." (Id. at p. 14:9-15)  The Court further noted, "I think it's a fair point and, more importantly, the Second Circuit agrees that it's a fair point." (Id. at pp. 14:25-15:1)

At the conclusion of the January 23 hearing, defendants asked whether the Court would be modifying its Order to allow Mele to be employed by Champion. (Id. at p. 20:23-25)  The Court answered, "No." (Id. at 21:1)  The Court, however, allowed defendants to make an application to modify the Court's Order and, in response to defendants' question **whether "the order remains under the power of the court"**, the Court answered, "Yes". (Id. at p. 21:2-17 (emphasis added))

Thus, the Court's January 27, 2020 Order and its January 23, 2020 decision limited any arbitration proceeding to a determination whether the Release Agreement's arbitration clause covers the claims asserted by GMI against Champion and Mele in its Amended Complaint filed in federal court: "The Parties are ordered to proceed to arbitration for a determination of the arbitrability of the instant dispute." (See Order, dated January 27, 2020, Dkt. No. 39)  The Court specified the one and only question that an arbitrator could and is judicially authorized to resolve at this stage.  The Court did not authorize the American Arbitration Association to consider whether to modify or vacate the preliminary injunction to which it ruled that GMI was entitled (as defendants asked the Association to do before it sought leave from this Court to circumvent its decision).

Finally, as set forth above, even if an arbitrator were to decide that GMI's claims against Mele were subject to arbitration, defendants have not provided any controlling authority – notwithstanding ample opportunity given the extensive motion practice – reversing the Second Circuit's holding, repeatedly reaffirmed, that district courts may grant injunctive relief when an issue or the merits of a case has been delegated to an arbitrator for decision.

We remain available for any conference that Your Honor may deem necessary.

Respectfully submitted,

*s/Eric A. Savage*

Eric A. Savage

cc:     All counsel of record via ECF